SAMUEL DIAMANT (SBN # 288738)
 *sdiamant@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:     (415) 318-1200
Facsimile:      (415) 318-1300

OLIVIA A. RADIN (*pro hac vice submitted herewith*)
 *oradin@kslaw.com*
LAURA E. HARRIS (*pro hac vice submitted herewith*)
 *lharris@kslaw.com*
**KING & SPALDING LLP**
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone:     (212) 556-2100
Facsimile:      (212) 556-2222

*Attorneys for Plaintiff*
GOOGLE IRELAND LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE IRELAND LIMITED,<br><br>                   Plaintiff,<br><br>         v.<br><br>OOO GOOGLE,<br><br>                   Defendant. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF AND TO COMPEL ARBITRATION** |

Plaintiff Google Ireland Limited ("Google Ireland") for its Complaint against Defendant OOO Google ("Google Russia") alleges as follows:

### INTRODUCTION

1.    This dispute arises from a broader "world legal war"[1] against Google LLC ("Google"), Google Ireland, and their affiliates (collectively, the "Google Entities"), waged by powerful Russian state-owned and Kremlin-aligned institutions against the Google Entities for complying with U.S. law and/or their own policies.

2.    In the first stage of this vitriolic campaign, these parties obtained invalid Russian court judgments that impose unprecedented penalties on the Google Entities, now reportedly equal to $20 decillion, a number with 34 zeroes. As a result, Google Russia, a Russian entity and former Google affiliate, is in bankruptcy in the Russian courts (the "Bankruptcy"). Google Russia is now under the control of a court-appointed liquidator (the "Liquidator"), who directs its activities and is affiliated with the same parties that persecuted the Google Entities.

3.    The Liquidator now seeks to leverage the compromised Russian court system further and has filed claims before the Russian court that seek a $1.3 billion judgment against Google Ireland and to hold the Google Entities liable for the debts of Google Russia, which include the invalid Russian court judgments (the "Claims"). If successful, the Liquidator will obtain more unconscionable Russian court judgments, which he will seek to enforce outside Russia on behalf of Google Russia. Google Ireland seeks to enjoin the unlawful litigation in Russia and to compel the litigation of the Claims in arbitration.

4.    The Claims relate to two contracts between Google Russia and Google Ireland executed in 2009 and 2018 (the "Contracts" or "RSAs"). The Contracts are valid reseller agreements (respectively, the "2009 RSA" and the "2018 RSA"), setting forth the terms under which Google Russia would buy advertising space from Google Ireland, for resale in Russia. The Liquidator alleges that the 2009 RSA should not have been terminated because it provided better pricing for Google Russia than

---

[1] *Russians Will Finish Off Google: The World Legal War Will Begin in 2023*, Tsargrad TV (Nov. 24, 2022), https://tsargrad.tv/articles/russkie-dobjut-google-mirovaja-juridicheskaja-vojna-nachnjotsja-v-2023-godu_671514 (last visited Dec. 23, 2024).

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

the 2018 RSA, and that the 2018 RSA is void for the same reason (the "RSA Clawback Claim"). In addition, the Liquidator has brought a separate claim in the Bankruptcy asking the Russian court to hold Google Ireland and others jointly and severally liable for all of Google Russia's debts, including reportedly the decillions of dollars of penalties that have already been imposed by the Russian courts. These "secondary liability" claims are based, *inter alia*, on the termination of the 2009 RSA and the implementation of the 2018 RSA (the "RSA Secondary Liability Claim"). In bringing his unfounded Claims in Russia, the Liquidator ignores that the Contracts are governed by California law and contain binding arbitration agreements under which the parties agreed to resolve all disputes relating to the Contracts by arbitration in Santa Clara County, California.

5.      The "world legal war" against the Google Entities commenced after Google terminated or blocked the Google accounts and/or YouTube channels of certain Russian propaganda outlets (the "Propaganda Outlets") and Google Ireland ceased providing advertising services to them. The Propaganda Outlets are owned and/or controlled by powerful Russian institutions, including the Russian state, the Russian Orthodox Church, and Kremlin-aligned oligarchs, many of whom were and are subject to U.S. sanctions. The Propaganda Outlets responded by suing the Google Entities in Russia, in violation of binding forum-selection clauses. By proceeding in Russia, they sought to weaponize the Russian court system, which is subject to political influence, against the Google Entities. And they included Google Russia—which had no contractual or other relationship with them—as a defendant, because it was based in Russia and therefore subject to coercion by the Russian state. The Google Entities objected to the Russian court's jurisdiction, but its objections were overruled.

6.      The Propaganda Outlets sought to compel the Google Entities to provide a platform for them indefinitely or face unprecedented penalties. The Russian court granted their requested relief essentially verbatim. The Propaganda Outlets obtained judgments for specific performance and compounding penalties called "*astreintes*" now reportedly totaling more than $20 decillion (the "Astreinte Judgments").[2] The Propaganda Outlets promised to use the Astreinte Judgments to "attack[]

---

[2] *Russian media demands $20,000,000,000,000,000,000,000,000,000,000,000 from Google – RBK*, RT (Oct. 29, 2024), https://www.rt.com/russia/606672-google-russian-media-decillion/ (last visited Dec. 23, 2024).

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

[Google] in all host countries relentlessly and methodically" and to use the proceeds of any victory towards the war in Ukraine.[3]

7.      The Liquidator—notwithstanding his obligation to act neutrally and impartially—has acted in service of the "world legal war" to extort the Google Entities and fund Russia's war in Ukraine. The Bankruptcy is now being used as a vehicle to expropriate additional assets from the Google Entities and to enforce the Astreinte Judgments. The Liquidator is represented in the Bankruptcy by the law firm Art de Lex—the same attorneys who represent many of the Astreinte Judgment holders in their "war" against Google. In the Bankruptcy, the Liquidator has elevated the payment priority of Astreinte Judgment creditor claims, such that they and the Liquidator will receive all money paid out by Google Russia. And the Liquidator has sought to seize as much money as possible for Google Russia. As part of that effort, in October 2024, the Liquidator filed the Claims in Russia on behalf of Google Russia. By doing so, the Liquidator hopes to seize another $1.3 billion for distribution to the Propaganda Outlets and to open another channel for enforcement of the invalid Astreinte Judgments.

8.      Google Ireland brings this action to enjoin Google Russia from further litigating the Claims in Russia, in violation of the parties' agreements to arbitrate. Time is of the essence: on January 31, 2025, the Russian court will hold its first hearing on Google Russia's RSA Clawback Claim and RSA Secondary Liability Claim. But the Russian court is not the proper forum for this dispute at all and, for this reason, should Google Russia wish to continue to litigate the Claims, Google Ireland seeks an order to compel Google Russia to do so in arbitration, pursuant to the parties' agreements.

### THE PARTIES

9.      Plaintiff Google Ireland is an Irish legal entity registered in Ireland at Gordon House, Barrow Street, Dublin 4. Google Ireland is a technology company that, *inter alia*, sold advertising space to Google Russia and authorized Google Russia to resell such advertising space within Russia. Google Ireland is an affiliate of Google.

---

[3] *Tsargrad vs. Google: War Will Go On All Over the World*, Tsargrad TV (Mar. 17, 2022), https://tsargrad.tv/articles/cargrad-protiv-google-vojna-pojdjot-povsemu-miru_511334 (last visited Aug. 19, 2024).

3

10.     Defendant Google Russia is a corporation organized under the laws of the Russian Federation and registered in Russia, 115114, Moscow, Zamoskvorechye municipality, Letnikovskaya st., 2, bldg. 1. Google Russia is a former affiliate of Google. Google Russia was a reseller of advertising space. Pursuant to the Contracts, Google Russia purchased advertising space from Google Ireland, which it sold to Russian customers. In June 2022, after all of its liquid assets had been frozen and/or seized by the Russian Federal Bailiff Service (the "Bailiffs") to enforce an Astreinte Judgment, Google Russia declared bankruptcy.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over this action pursuant to 9 U.S.C. § 4 by virtue of Google Russia and Google Ireland's agreement to arbitrate all disputes relating to the RSAs. The Contracts provide that any unresolved disputes shall be arbitrated in Santa Clara County, California. *See* Amended and Restated Google Reseller Agreement dated Dec. 9, 2009, § 12 (defined above as the 2009 RSA) (Ex. A); Google Reseller Agreement dated Apr. 24, 2018, § 12 (defined above as the 2018 RSA) (Ex. B).

12.     Furthermore, both the Russian Federation and the United States are parties to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. An arbitration agreement "arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the convention." 9 U.S.C. § 202. United States district courts "shall have original jurisdiction" over any action or proceeding "falling under the Convention" because it shall be "deemed to arise under the laws and treatises of the United States." 9 U.S.C. § 203.

13.     This Court has personal jurisdiction over Google Russia pursuant to its agreement to arbitrate all disputes relating to the RSAs in Santa Clara County, California. In addition, Google Russia "agree[d] to submit to the personal and exclusive jurisdiction of the courts located in Santa Clara County, California" in section 13 of the 2009 RSA and agreed that either party could "apply to any court having jurisdiction for injunctive relief necessary to protect its rights pending resolution of the arbitration" in section 12 of the 2018 RSA.

4

14.     Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b)(2), because both the 2009 RSA and the 2018 RSA provide that the parties must resolve any disputes by arbitration seated in Santa Clara County, California. Google Russia failed to initiate arbitration in this District as required by each of the respective agreements. Furthermore, the venue provision of the Federal Arbitration Act provides that where an arbitration agreement designates a place of arbitration in the United States, an action may be brought in the district embracing the place of arbitration. *See* 9 U.S.C. § 204. Through the 2009 and 2018 RSAs, the parties consented to venue in the Northern District of California by agreeing that all disputes under the agreement shall be resolved in Santa Clara County, California.

## FACTUAL ALLEGATIONS

15.     Over the past decade—and in particular following Russia's 2014 invasion of Ukraine's Crimean Peninsula and its 2022 invasion of Ukraine—Russia's relationship with western governments has grown increasingly hostile. As the U.S. and other western governments have responded to Russia's war in Ukraine with an escalating series of economic sanctions, the Kremlin and its supporters have used the levers of government to expropriate assets from western companies. As a spokesperson for Russia's Ministry of Foreign Affairs has explained, "[o]ur country has significant amounts of Western funds and property that are under Russian jurisdiction—all of this may be subject to Russian retaliatory policies and retaliatory actions."[4] Although, "[o]f course, no one will disclose the nature of these retaliatory actions to you[,] … the arsenal of political and economic countermeasures is wide."[5]

16.     Within that "arsenal of political … countermeasures," is the "Lugovoy Law," which Russia enacted in June 2020.[6] The law—enshrined in Article 248.1 of the Russian Arbitrazh Procedural

---

[4] *Russia says it has plenty of scope to retaliate over plan to seize income from its assets*, Reuters (June 19, 2024), https://www.reuters.com/world/europe/russia-says-it-has-plenty-scope-retaliate-over-plan-seize-income-its-assets-2024-06-19/ (quoting Maria Zakharova, Spokesperson of the Ministry of Foreign Affairs of the Russian Federation).

[5] *Id.*

[6] Andrey Lugovoy, the Russian MP who sponsored the bill, became a member of the State Duma after Russia refused his extradition to the United Kingdom on charges for his alleged role in the widely reported poisoning and murder of Alexander Litvinenko, a former KGB and later FSB officer, in London in 2006.

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

Code ("APC")—provides Russian sanctioned parties the option of bringing claims before the Arbitrazh Court of the City of Moscow (the "Arbitrazh Court"), a trial court for business disputes, against parties from "unfriendly countries," *i.e.*, countries that have imposed sanctions on Russia, such as the United States. The resulting proceedings are ripe for abuse and can be used as a vehicle for expropriation.

17.    Russia has also cracked down on free expression, including where western companies have resisted efforts to restrict anti-Kremlin content. In December 2020, Russia enacted a law imposing fines on hosting providers and website owners for not removing content in response to demands from the Russian Federal Service for Supervision of Communications, Information Technology and Mass Media (known as "Roskomnadzor").[7] Over $320 million of these fines have been imposed on Google relating to videos posted on YouTube, including content that is critical of the Kremlin (the "Content Fines").[8]

18.    In other settings, the Russian state has seized assets outright, enacted an "exit tax" on western companies leaving Russia, imposed currency controls that prevent international businesses from repatriating funds outside Russia, required foreign investors to hold financial assets and securities in blocked "type-c accounts", and frozen the assets of individuals and entities from "unfriendly countries."[9]

19.    It is within that broader context that this dispute arises.

---

[7] *See* Iana Fremer, *Russian Federation: New Law Enables Restrictions on Digital Platforms*, Library of Congress (Feb. 22, 2021), www.loc.gov/item/global-legal-monitor/2021-02-22/russian-federation-new-law-enables-restrictions-on-digital-platforms/ (last visited Jan. 23, 2025).
[8] *See Russia fines Google $370 million for repeated content violations, regulator says*, Reuters (July 18, 2022), https://www.reuters.com/technology/google-is-fined-390-mln-russia-not-deleting-banned-content-interfax-2022-07-18/ (last visited Jan. 23, 2025).
[9] *See* Giovanni Legorano, *Western Companies Are Now Paying for Russian Sanctions*, Foreign Policy (July 12, 2024)*,* https://foreignpolicy.com/2024/07/12/sanctions-russia-western-companies-retaliation-putin-europe/ (last visited Jan. 23, 2025).

6

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

A.    **Google Russia's Bankruptcy**

1.    **Google Russia Was Driven into Bankruptcy by Enforcement of an Invalid Astreinte Judgment**

a)    **Google Ceases to Provide Certain Services in Russia Pursuant to U.S. Sanctions Laws and/or Its Own Policies**

20.    Starting in 2020, Google terminated or blocked the Google accounts and/or YouTube channels[10] of the Propaganda Outlets to comply with U.S. sanctions and/or its own policies. The Propaganda Outlets retaliated by filing suits against the Google Entities in Russia under the Lugovoy Law, Article 248.1 of the APC.

21.    NAO Tsargrad Media ("Tsargrad") was the first Propaganda Outlet to file suit and obtain an Astreinte Judgment. Tsargrad is a Russian nationalist propaganda outlet indirectly majority-owned by Konstantin Malofeyev.

22.    In 2014, Tsargrad created a Google account and YouTube channel. Google provided the Google account and YouTube channel pursuant to the Google Terms of Service (the "Google Terms of Service") and YouTube Terms of Service (the "YouTube Terms of Service"), to which Tsargrad consented. Tsargrad entered into a separate agreement with Google Ireland for advertising services (the "Monetization Contract"). The Google and YouTube Terms of Service and the Monetization Contract included forum-selection clauses that required all disputes to be resolved in either California or England.

23.    Malofeyev is a Kremlin-aligned Russian oligarch who has been sanctioned by the United States and other governments[11] for (among other things) funding separatist activities in Eastern Ukraine, financing Russian efforts in support of the annexation of Crimea, and supporting Putin-regime activities designed to undermine democratic elections and harm the security and stability of numerous countries. Tsargrad's parent company, OOO Tsargrad, is owned by Malofeyev and was also

---

[10] Users with Google accounts can create YouTube channels to upload content on YouTube, including videos, comments, and playlists. They can enter into separate agreements to earn revenues, including from ad placements, on their YouTube channels ("monetization").

[11] Malofeyev has also been sanctioned by Australia, Canada, the European Union, Japan, New Zealand, Switzerland, Ukraine, and the United Kingdom.

7

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

sanctioned. The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") identified OOO Tsargrad as a "cornerstone" of Malofeyev's "broad malign influence network" that "spreads pro-Kremlin propaganda and disinformation."[12] OOO Tsargrad spreads such propaganda and disinformation through Tsargrad.[13]

24.    In July 2020, Google ceased providing services to Tsargrad in compliance with U.S. sanctions laws and/or Google's relevant policies after identifying it as an entity that was indirectly majority-owned by Malofeyev. Google terminated Tsargrad's Google account and its associated YouTube channel. Google Ireland also ceased providing advertising services to Tsargrad.

25.    In August 2020, Tsargrad, represented by Art de Lex, filed suit against Google, Google Ireland, and Google Russia in the Arbitrazh Court. Tsargrad asked the Arbitrazh Court to order Google, Google Ireland and Google Russia to reinstate its Google account and YouTube channel, and to continue providing services to Tsargrad. Tsargrad further asked the Arbitrazh Court to impose an *astreinte* penalty on Google and its affiliates if the account and channel were not reinstated. Tsargrad asked that this penalty start at 100,000 rubles (approximately $1,050) per day and double each week until Google complied with the Arbitrazh Court's order. Tsargrad proceeded under Article 248.1 of the APC, even though Tsargrad had agreed to bring all disputes relating to the Google and YouTube Terms of Service and the Monetization Contract in either California or England. And it named Google Russia—which was based locally *and thus* subject to the compulsive power of the Russian state—as a defendant, even though Google Russia was not a party to any of the contracts at issue and did not provide any services to Tsargrad.

26.    Even though the parties had expressly selected a forum outside Russia to resolve disputes and despite the Google Entities' objections, the Arbitrazh Court ignored the parties' contractual agreements and asserted jurisdiction over the case. On April 20, 2021, the Arbitrazh Court

---

[12] U.S. Department of Treasury's Office of Foreign Assets Control, *U.S. Treasury Designates Facilitators of Russian Sanctions Evasion*, Press Release (Apr. 20, 2022), https://home.treasury.gov/news/press-releases/jy0731 (last visited Jan. 23, 2025).
[13] In addition, OFAC sanctioned OOO Tsargrad-Media "for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, [OOO] Tsargrad." OOO Tsargrad-Media is an affiliate of Tsargrad. *See supra* n.12.

8

granted Tsargrad's claims (the "Tsargrad Judgment"). The court ordered Google, Google Ireland, and Google Russia, jointly and severally, to reinstate Tsargrad's Google account and related services, including Tsargrad's YouTube channel.[14] The Arbitrazh Court imposed Tsargrad's requested *astreinte* verbatim, holding that Google, Google Ireland and Google Russia were jointly and severally liable. By issuing this order, the Arbitrazh Court ignored that Google and Google Ireland had the right to stop providing services to Tsargrad and ordered them to continue doing business with a sanctioned propaganda outlet indefinitely and against their will. Moreover, the Arbitrazh Court ignored that Google Russia had no legal or technical control over Tsargrad's Google account or YouTube channel, which were provided by Google, and that it was a separate corporate entity that was not a party to the Google and YouTube Terms of Service or the Monetization Contract. The Arbitrazh Court held Google Russia liable along with Google and Google Ireland.

27.     The Ninth Arbitrazh Court of Appeal (the "Russian Appellate Court") affirmed the Tsargrad Judgment, subject to a temporary, nine-month cap of one billion rubles on the *astreinte* (the "Tsargrad Appellate Judgment"). The Arbitrazh Court of the Moscow Circuit (the "Russian Cassation Court") and the Supreme Court of Russia summarily upheld the Tsargrad Judgment as modified by the Russian Appellate Court, and once the nine-month period elapsed, the Astreinte Judgment continued doubling in value every seven days.

### b)     The Tsargrad Judgment Drives Google Russia Into Bankruptcy

28.     In or around March 2022, the Bailiffs, an instrumentality of the Russian government, seized all of Google Russia's liquid assets (the "Seizure") pursuant to writs to enforce the Tsargrad Judgment. The Bailiffs further issued an ongoing demand that Google Russia's bank freeze and transfer all the money in Google Russia's accounts to the Bailiffs.

29.     Under the Tsargrad Appellate Judgment, the maximum amount purportedly due at the time of the Seizure was one billion rubles (which was less than $12.5 million). Nevertheless, the Bailiffs

---

[14] In rendering the Tsargrad Judgment, the Arbitrazh Court not only lacked jurisdiction, but it also ignored the terms of the applicable contracts, including on foreign governing law, limitation of liability and the right to terminate the provision of services including due to sanctions and for content policy reasons.

9

unlawfully seized approximately $100 million of Google Russia's assets. After the seizure of Google Russia's assets, Malofeyev announced he would donate approximately one billion rubles he said he received to help fund the Russian government's invasion of Ukraine.[15]

30.     As a result of the Seizure, Google Russia had no liquid assets and could no longer operate. It became insolvent and filed for bankruptcy on June 16, 2022.

### 2.     Additional Propaganda Outlets Obtain Astreinte Judgments and Seek to Enforce them in the Bankruptcy

31.     After Tsargrad obtained its Astreinte Judgment and especially after the Seizure, numerous other Propaganda Outlets sued the Google Entities in Russia under Article 248.1 of the APC in breach of the parties' agreements. These Propaganda Outlets also obtained Astreinte Judgments, which were imposed in March 2022 onward. Art de Lex represented some of these parties, including ANO TV-Novosti ("TV-Novosti") and NO Fond Pravoslavnogo Televideniya ("NFPT").

32.     The Astreinte Judgment holders have promised to wage an extortionate "world legal war" against the Google Entities, "attack[] [Google] in all[...] countries relentlessly and methodically,"[16] and not stop until Google "ha[s] the earth burning under its feet all over the planet."[17]

33.     Given the compounding nature of Astreinte Judgments, with weekly doubling of the daily penalty, their total amount is publicly reported to exceed $20,600,000,000,000,000,000,000,000,000,000,000[18] (*i.e.*, $20.6 decillion) an amount that exceeds the total gross domestic product of all countries on Earth by several orders of magnitude.

---

[15] In April 2022, OFAC appeared to cite this as evidence that OOO Tsargrad functions as the "cornerstone of Malofeyev's broad malign influence network," pointing to OOO Tsargrad's "recent[] pledge[] to donate more than $10 million to support Russia's unprovoked war against Ukraine." *See supra* n.12.

[16] *The Russians Will Finish Off Google: The World Legal War Will Begin In 2023*, Tsargrad TV (Nov. 24, 2022), https://tsargrad.tv/articles/russkie-dobjut-google-mirovaja-juridicheskaja-vojna-nachnjotsja-v-2023-godu_671514 (last visited Jan. 23, 2025).

[17] *Vona! 2 undecillions! Google has received another lawsuit for a huge amount*," Pravda EN (Oct. 29, 2024), https://news-pravda.com/world/2024/10/29/813462.html (last visited Jan. 23, 2025).

[18] *Russia fines Google $20,000,000,000,000,000,000,000,000,000,000,000,000*, CNN (Oct. 31, 2024), https://edition.cnn.com/2024/10/31/tech/google-fines-russia/index.html (last visited Jan. 23, 2025).

34.     According to Putin's spokesperson, Dmitry Peskov, these Astreinte Judgments against the Google Entities are "full of symbolism" in Russia's battle against Western influence and should "illustrate" that "Google should not restrict the activities of our broadcasters on its platform."[19]

35.     Tsargrad, TV-Novosti, NFPT and other Astreinte Judgment holders have brought claims in the Bankruptcy to enforce their Astreinte Judgments against Google Russia.

### 3.     The Liquidator Takes Control of Google Russia and Prioritizes Astreinte Judgments

36.     Under Russian law, the first phase of bankruptcy is "supervision." Even though another individual had been appointed by the lower court, the Russian Appellate Court appointed Valeriy A. Talyarovsky in November 2022 to act as Google Russia's interim bankruptcy manager, known as the "supervisor" (the "Supervisor"). As the Supervisor, Talyarovsky was meant to collect information about Google Russia and issue impartial reports describing and categorizing the claims of Google Russia's creditors. Instead, he acted in the interest of the Astreinte Judgment holders.

37.     Talyarovsky is represented in the Bankruptcy by Art de Lex, the same law firm that represents Tsargrad and other Astreinte Judgment holders in litigation against the Google Entities and on their creditor claims against Google Russia. This means that Art de Lex is carrying out work on behalf of Google Russia, including evaluating what claims have been lodged against it, while also representing the parties with the largest claims against it. Google Russia, creditors, and Google Russia's sole shareholder, Google International LLC, objected to this obvious conflict of interest and moved to replace the supervisor, but the Arbitrazh Court rejected the claim.

38.     On August 22, 2023, Talyarovsky held a meeting of Google Russia's registered creditors[20] to vote on whether to commence the second phase of Google Russia's bankruptcy, called "liquidation," and appoint a self-governing organization ("SGO") from which the Liquidator—who would assume control over Google Russia—would be chosen. At the time, Google Russia's largest

---

[19] *Google should not restrict Russian TV channels broadcasting on its platform — Kremlin*, TASS (Oct. 31, 2024), https://tass.com/politics/1865113 (last visited Jan. 23, 2025).

[20] Other than certain high-priority "current claims," most claims are entered in the creditor's register, which reflects the claims registered against the bankrupt entity.

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

registered creditor, with 97% of the vote, was the Russian Federal Taxation Service (the "Tax Authority"), which represents the Russian government in asserting creditor claims against corporations. Here, the Tax Authority had baselessly asserted creditor claims against Google Russia for the Content Fines imposed on Google by Roskomnadzor. Even though Google Russia had nothing to do with the videos or Content Fines, the Arbitrazh Court allowed the Tax Authority to assert these claims against Google Russia, essentially treating Google Russia as a local piggybank.

39.    At the August 2023 meeting, the Tax Authority voted to appoint the SGO to which Talyarovsky belongs as the SGO from which the Liquidator would be selected. In turn, Talyarovsky's SGO nominated him as its proposed candidate. On October 18, 2023, the Arbitrazh Court adopted this recommendation and appointed Talyarovsky as Google Russia's Liquidator, over Google Russia's objections. The court's decision was immediately effective. Under Russian law, as Liquidator, Talyarovsky stepped into the shoes of Google Russia's directors and officers and assumed control of Google Russia's operations and corporate actions. As a result, since the moment of his appointment, Talyarovsky has acted as its chief executive officer and sole corporate member and has been in complete control of Google Russia.

### 4.    Talyarovsky and the Astreinte Judgment Holders Will Receive All Funds from the Bankruptcy

40.    As both Supervisor and Liquidator of Google Russia, Talyarovsky has recognized the Astreinte Judgments held by TV-Novosti, NFPT, and other Astreinte Judgment holders as so-called "current claims," which are among the highest-priority claims in the Bankruptcy. Currently, the purported value of these claims exceeds $20.6 decillion and is growing. Due to Talyarovsky's prioritization of these claims, Astreinte Judgment holders and the Liquidator will be the first in line to receive funds paid out by Google Russia.[21] Given their size, the Astreinte Judgments will consume the entirety of Google Russia's assets, including any additional money collected on behalf of Google

---

[21] At present, the only claims more senior to the current claims are minor expenses owed to Talyarovsky for his services as liquidator, and other operational costs for the bankruptcy.

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

Russia. Talyarovsky and Astreinte Judgment holders will therefore receive all funds collected by Google Russia.

**B.    The Present Dispute over the RSA Clawback Claim**

    **1.    The RSAs Are Valid Agreements and Require Arbitration of All Disputes "Relating To" Them**

41.    The Claims concern two Contracts that Google Russia executed with Google Ireland to acquire digital advertising space for resale in Russia.

42.    The parties signed the first of those Contracts, the 2009 RSA, on December 23, 2009.[22] The 2009 RSA set forth the commercial terms of the parties' business relationship:

    a.    In the 2009 RSA, Google Ireland appointed Google Russia a non-exclusive reseller of AdWords advertising space in Russia.[23] In that role, Google Russia acted for its own account and in its own name, and marketed and sold advertising space to Russian advertisers using its own sales force and customer service infrastructure.[24] Google Russia was not—and is not—an agent, employee, partner or franchisee of Google Ireland.[25]

    b.    In turn, Google Ireland agreed to provide Google Russia with advertising space for resale, technical and software support, training, and, to the extent required by applicable laws and agreed by the parties, to enable Google Russia to utilize Google Ireland's or its affiliates' server infrastructure in Russia.[26]

---

[22] The very first reseller agreement between the parties was executed in 2008 and terminated by the 2009 RSA. *See* 2009 RSA, as amended by the Deeds of Amendment dated March 19, 2010 and August 26, 2015. *See* Deed of Amendment in relation to the 2009 RSA dated March 19, 2010; Deed of Amendment in relation to the 2009 RSA dated August 26, 2015.

[23] *See* 2009 RSA § 2.1.

[24] *See* 2009 RSA § 2.2.

[25] *See* 2009 RSA § 2.1.

[26] *See* 2009 RSA §§ 3.1, 2.2, 3.2 and Cl. 4 of Ex. A.

13

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

c.   Under the 2009 RSA, Google Russia paid Google Ireland an "Adjusted Net Price", which the parties negotiated at arm's length. The Adjusted Net Price was based on gross sales, less a margin of 20% of the fees, taxes and direct costs.[27]

43.   The 2009 RSA permitted the parties to terminate the Contract by mutual agreement.[28] It also permitted Google Ireland to terminate the agreement without cause upon written notice. The 2009 RSA was terminated on April 24, 2018, pursuant to a document signed by both parties (the "2018 Termination").[29]

44.   The 2018 RSA set forth the commercial terms of the parties' relationship from April 1, 2018 forward:

a.   Google Ireland again appointed Google Russia as a non-exclusive reseller in Russia of its advertising space made available by Google Ireland through various products defined as "Google Products" therein, including AdWords.[30]

b.   Google Russia reaffirmed that it would sell advertising space to Russian customers using its own employees, consultants or agents and customer infrastructure.[31] Again, Google Russia acted for its own account, in its own name, and not as an agent, employee, partner or franchisee of Google Ireland.[32]

c.   Google Ireland undertook to sell the advertising space to Google Russia and reasonably assist Google Russia in the performance of its activities,[33] train Google Russia employees,[34] and provide it with online resources and tools in order to enable Google Russia to advertise Google Products.[35]

---

[27] *See* 2009 RSA Cl. 3 of Ex. A (defining "Adjusted Net Price").
[28] *See* 2009 RSA § 8.1.
[29] *See* 2018 Termination Notice.
[30] *See* 2018 RSA §§ 2.1,1.6, as amended by Amendment No. 1 dated September 23, 2019 and Amendment No. 2 dated October 9, 2019. *See* Amendment No. 1 dated September 23, 2019 in relation to the 2018 RSA Cl. 1(a); Amendment No. 2 dated October 9, 2019 in relation to the 2018 RSA Cl. 1(a).
[31] *See* 2018 RSA § 2.2.
[32] *See* 2018 RSA § 2.2.
[33] *See* 2018 RSA §§ 2.2, 3.1.
[34] *See* 2018 RSA § 3.3.
[35] *See* 2018 RSA § 3.3.

14

     d.     In recognition of changed market conditions, the 2018 RSA implemented updated pricing terms. In particular, the "Fee" to be paid by Google Russia was based on adjusted net revenues, less an arm's length return of 1.5% to 3% depending on the type of the customer.[36]

45.     Both RSAs are governed by California law. The RSAs provide that the parties must resolve any disputes arising thereunder by arbitration seated in Santa Clara County, California, before the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA").[37]

46.     On September 1, 2022, Google Ireland terminated the 2018 RSA with immediate effect due to Google Russia's bankruptcy application.[38]

**2.     The Liquidator Filed the Claims in the Arbitrazh Court in Violation of the RSAs' Mandatory Arbitration Provisions**

47.     Contrary to the RSAs' mandatory arbitration and governing law provisions, Talyarovsky has asserted several claims in the Arbitrazh Court that arise directly from the RSAs.

48.     On or around October 18, 2024, Talyarovsky filed the RSA Clawback Claim, which challenges the 2018 termination of the 2009 RSA and seeks to claw back the difference between payments that Google Russia would have received under the 2009 RSA and payments that it actually received under the 2018 RSA—in total, roughly $900 million, plus statutory interest that presently amounts to another approximately $400 million. If successful, those funds will be paid to the Liquidator for distribution to the Astreinte Judgment holders and the Liquidator.

49.     That same date, Talyarovsky filed the RSA Secondary Liability Claim, which seeks to hold Google Ireland and three former Google Russia employees secondarily liable for *all* of Google Russia's debts, including the purported multi-decillion *astreinte* penalties. The RSA Secondary Liability Claim alleges that Google Ireland is responsible for those debts—alongside several Google

---

[36] *See* 2018 RSA Cl. 2 of Ex. A.
[37] *See* 2009 RSA § 12; 2018 RSA § 12.
[38] *See* 2018 Termination Notice.

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

Russia employees—by virtue of the commercial relationship between the parties pursuant to the RSAs, as well the allegedly invalid termination of the 2009 RSA and execution of the 2018 RSA.

50.    Each of the Claims expressly invokes the RSAs, requires interpretation of the RSAs, and falls squarely within the broad arbitration provisions that apply to any action "relating to" either agreement. There can be no dispute that the validity of the termination of the 2009 RSA and the execution of the 2018 RSA—both of which occurred years prior to the Bankruptcy—directly concern the RSAs. The relationship between Google Ireland and Google Russia pursuant to the RSAs, and any dispute concerning the amount Google Russia paid Google Ireland pursuant to the contracts, likewise not only "relat[e] to" the RSAs, but require interpretation and construction of the agreements.

51.    These claims therefore must be resolved in accordance with the RSAs' governing law and arbitration provisions, rather than within the pretextual Bankruptcy.

52.    By proceeding in the Arbitrazh Court rather than in arbitration, it is clear that Talyarovsky is following the same playbook—written by his counsel Art de Lex—that resulted in the Astreinte Judgments against the Google Entities. That is, the Liquidator plans to impermissibly benefit from the world legal war being waged against the Google Entities in the Arbitrazh Court and obtain yet more invalid judgments against Google Ireland by bringing these Claims in Google Russia's bankruptcy. And the ultimate purpose of this strategy is to bring even more funds within the control of Google Russia, so they can be distributed to the Astreinte Judgment holders.

53.    As a result, there is every reason to believe that, if successful, Talyarovsky will seek to enforce the invalid judgments against Google Ireland and its affiliates in jurisdictions around the world, as Art de Lex has done in at least nine jurisdictions to enforce the Astreinte Judgments of Tsargrad, TV-Novosti and NFPT. Accordingly, it is highly likely that Talyarovsky will follow this same playbook on behalf of Google Russia if the Arbitrazh Court grants his claims.

54.    In addition, it is likely that Talyarovsky will seek an injunction from the Arbitrazh Court to prevent Google Ireland from proceeding with this action.

55.    These risks are imminent: the Arbitrazh Court accepted the Claims for consideration on November 8, 2024 and will hear the Claims on January 31, 2025. Although it is the first hearing in

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

connection with the Claims, the court may issue judgment in favor of Google Russia, which Talyarovsky and Art de Lex are likely to attempt to enforce against Google Ireland and its affiliates around the world. Injunctive relief is necessary to prevent these harms.

**COUNT I:**

**TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT**

**ANTI-SUIT INJUNCTION**

56.    Google Ireland incorporates by reference paragraphs 1–55 as though fully set forth herein.

57.    Both the 2009 and 2018 RSAs provide that the parties must resolve any disputes by arbitration seated in Santa Clara County, California, before the ICDR of the AAA.

58.    The parties mutually terminated the 2009 RSA in 2018. Google Ireland terminated the 2018 RSA in 2022 in accordance with the agreement's termination clause, after Google Russia commenced its Bankruptcy. The RSAs' arbitration provisions survive the termination of the RSAs.

59.    The RSA Clawback Claim seeks to claw back payments made from Google Russia to Google Ireland under the 2009 and 2018 RSAs. Accordingly, the RSA Clawback Claim is subject to the arbitration provisions set forth in both the 2009 and 2018 RSAs, which broadly call for any disputes "relating to" the RSAs to be arbitrated.

60.    The RSA Secondary Liability Claim alleges that Google Ireland and three former Google Russia employees are secondarily liable for all of Google Russia's debts by virtue of the commercial relationship between Google Russia and Google Ireland, pursuant to the RSAs, as well as the allegedly invalid termination of the 2009 RSA and execution of the 2018 RSA. Accordingly, the RSA Clawback Claim is subject to the arbitration provisions set forth in both the 2009 and 2018 RSAs, which broadly call for any disputes "relating to" the RSAs to be arbitrated.

61.    Google Russia has filed the RSA Clawback Claim and the RSA Secondary Liability Claim in the Arbitrazh Court. Both claims are subject to the dispute resolution provisions set forth in both the 2009 RSA (which requires any disputes "arising under, related to, or in connection with" that agreement to be resolved by arbitration) and the 2018 RSA (which requires any disputes "relating to"

17

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

that agreement to be resolved by arbitration). Accordingly, pursuant to the RSAs, any RSA Clawback Claim and any RSA Secondary Liability Claim—indeed, any claim "relating to" either RSA—must be arbitrated in Santa Clara County, California.

62.    An anti-suit injunction should issue to enjoin Google Russia, its Liquidator, officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, whether acting directly or indirectly, in the United States or abroad, from prosecuting the RSA Clawback Claim or RSA Secondary Liability Claim in Russia; initiating or prosecuting any other action against Google Ireland relating to the RSAs in Russia or anywhere else in the world except in compliance with its obligations under the RSAs; or initiating or prosecuting any action in Russia to prevent or restrain Google Ireland from filing this action or arbitrations under the RSAs.

63.    In the absence of such injunctive relief, Google Ireland will be irreparably harmed because it will be deprived of the benefits of its bargain, and will face the possibility of adverse judgments from a tribunal to which the parties to the RSA did not agree to submit their disputes, as well as the possibility of inconsistent results in the Arbitrazh Court and the arbitration sought by Google Ireland. This harm is imminent given the Arbitrazh Court's hearing scheduled for January 31, 2025.

64.    Google Russia will not be prejudiced, because the anti-suit injunction would merely enforce agreements Google Russia entered into freely and at arm's length. Because Talyarovsky succeeds to Google Russia's claims in his position as Liquidator, he is bound by the terms of the RSAs and similarly cannot assert any prejudice from an anti-suit injunction.

65.    The public interest weighs in favor of an anti-suit injunction because such an injunction will further the enforcement of negotiated contractual rights, prevent injury, and limit the potential fallout from illegally and improperly obtained, pretextual judgments issued by a foreign court with no respect for international comity.

## COUNT II:

## COMPEL ARBITRATION

66.    Google Ireland incorporates by reference paragraphs 1–55 as though fully set forth herein.

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

67.    Both the 2009 RSA and the 2018 RSA provide that the parties must resolve any disputes "relating to" the RSAs by arbitration seated in Santa Clara County, California, before the ICDR of AAA.

68.    The RSA Clawback Claim seeks to claw back payments made from Google Russia to Google Ireland under the 2009 and 2018 RSAs. Accordingly, the RSA Clawback Claim is subject to the arbitration provisions set forth in both the 2009 and 2018 RSAs, which broadly call for any disputes "relating to" the RSAs to be arbitrated.

69.    The RSA Secondary Liability Claim alleges that Google Ireland and three former Google Russia employees are secondarily liable for all of Google Russia's debts by virtue of the commercial relationship between Google Russia and Google Ireland, pursuant to the RSAs, as well the allegedly invalid termination of the 2009 RSA and execution of the 2018 RSA. Accordingly, the RSA Clawback Claim is subject to the arbitration provisions set forth in both the 2009 and 2018 RSAs, which broadly call for any disputes "relating to" the RSAs to be arbitrated.

70.    By filing action in the Arbitrazh Court, Google Russia directly breached the arbitration provisions contained in both the 2009 RSA and 2018 RSA.

71.    The arbitration provision set forth in Section 12 of the 2009 RSA and Section 12 of the 2018 RSA is enforceable by the Court pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 200 *et seq.*, which obligates the Court, upon petition, to enter an order directing that arbitration proceed in the manner provided for in the arbitration agreement. *See* 9 U.S.C. §§ 4, 206. Google Ireland is entitled to an order from this Court compelling the liquidator acting on behalf of Google Russia to arbitrate any claims related to the 2009 or 2018 RSAs in Santa Clara County.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in favor of Google Ireland and against Google Russia, as follows:

72.    Declarations that the mandatory arbitration provisions in the 2009 RSA and 2018 RSA are binding upon Google Russia;

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

73.     Preliminary and permanent injunctions enjoining Google Russia, its Liquidator, officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, whether acting directly or indirectly, in the United States or abroad, from

      a.    commencing, prosecuting, continuing, taking any steps in, or otherwise participating in any proceedings to pursue or redress any claims on behalf of Google Russia against Google Ireland or its current or former affiliates, or any of their officers, agents, servants, employees, or attorneys, relating to the RSAs in any forum other than the arbitration proceedings mandated by the terms of the RSAs;

      b.    commencing, prosecuting, continuing, taking any steps in, or otherwise participating in any proceedings to pursue clawback, secondary liability or other claims in the Russian Federation relating to the RSAs on behalf of Google Russia against Google Ireland or its current or former affiliates, or any of their officers, agents, servants. employees, or attorneys, including the applications filed by Google Russia's liquidator on October 18, 2024 in the Arbitrazh Court; or

      c.    commencing, prosecuting, continuing, taking any steps in, or otherwise participating in any proceedings in the Russian Federation intended to restrain or impede Google Ireland's pursuit of this action.

74.     An order compelling arbitration in accordance with Section 12 of the 2009 RSA and Section 12 of the 2018 RSA;

75.     Attorneys' fees and costs; and

76.     Such other and further relief as the Court deems just and proper.

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION

Dated:  January 24, 2025                    Respectfully submitted,


**KING & SPALDING LLP**

By: _/s/ Samuel Diamant_
OLIVIA A. RADIN
LAURA E. HARRIS
SAMUEL DIAMANT

_Attorneys for Plaintiff_
GOOGLE IRELAND LIMITED

COMPLAINT FOR INJUNCTIVE AND EQUITABLE
RELIEF AND TO COMPEL ARBITRATION