BRUCE MARKS (pro hac vice)
THOMAS SULLIVAN (pro hac vice)
**MARKS & SOKOLOV LLC**
1835 Market Street, 17th Floor
Philadelphia, PA 19103
Tel: (215) 569-8901
Fax: (215) 569-8912
Email: marks@mslegal.com
tsullivan@mslegal.com

ADRIAN SAWYER , State Bar No. 203712
**SAWYER & LABAR LLP**
1700 Montgomery Street, Suite 108
San Francisco, CA 94111
Tel: (415) 262-3820
sawyer@sawyerlabar.com

*Attorneys for Intervenor*
NO FOND PRAVOSLAVNOGO
TELEVIDENIYA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE IRELAND LIMITED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OOO GOOGLE,<br><br>　　　　Defendant,<br><br>　　and<br><br>NO FOND PRAVOSLAVNOGO TELEVIDENIYA,<br><br>　　　　Intervenor. | Case No. 5:25-cv-00851-EJD<br><br>**MEMORANDUM IN SUPPORT OF INTERVENOR'S MOTION TO VACATE THE PRELIMINARY INJUNCTION, DENY INJUNCTIVE RELIEF, AND DISMISS**<br><br>**DATE: APRIL 3, 2025**<br>**TIME: 10 A.M.**<br>**CRTRM.: 4, 5ᵀᴴ FLOOR** |

# Table of Contents

INTRODUCTION .................................................................................................1

RELEVANT FACTUAL BACKGROUND .........................................................4

    A.    OOO Google's Bankruptcy .................................................4

    B.    The Sham Transaction Claims .........................................5

    C.    The Subsidiary Liability Claims ......................................6

    D.    The Court Liquidator May Not Pay Foreign Counsel
        Without Court Approval .................................................6

    E.    The Russian Injunctions ..................................................7

ARGUMENT ......................................................................................................7

    I.    THE PI ORDER SHOULD BE VACATED BECAUSE
        PRAVOSLAV'S INTERESTS WERE NOT ADEQUATELY
        REPRESENTED WHEN ENTERED ........................................7

    II.    INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE
        GOOGLE IRELAND CANNOT MEET ITS HEAVY BURDEN
        UNDER THE TRADITIONAL PI TEST **.....................................9**

        A.    Google Ireland Cannot Establish Likelihood Of Success
            On The Merits ...........................................................10

            1.    The Court Lacks Subject Matter Jurisdiction.........10

            2.    The Russian Court Has Exclusive Jurisdiction Over
                The Liquidator Claims ........................................12

            3.    Under The Prior Exclusive Jurisdiction Doctrine,
                This Court May Not Exercise Jurisdiction.............15

        B.    Google Ireland Cannot Establish It Is Likely To Suffer
            Irreparable Harm .......................................................16

        C.    Google Ireland Cannot Establish The Balance Of
            Hardships And Equities...............................................16

        D.    Google Ireland Cannot Establish Public Policy Favors An
            Injunction ..................................................................16

    III.    INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE
        GOOGLE IRELAND CANNOT SATISFY THE NINTH
        CIRCUIT ANTI-SUIT INJUNCTION TEST **.............................17**

A.    The Parties And Issues Are Not The Same ..........................................18

B.    The *Unterweser* Factors Do Not Favor Google Ireland.....................18

    1.    Google Ireland Cannot Establish Domestic Policy
       Favors An Injunction............................................................19

    2.    There Is No Vexation or Oppression ....................................19

    3.    An Injunction Interferes With The Russian Court's
       *In Rem* Jurisdiction..............................................................19

    4.    Google` Ireland Cannot Establish Equitable Factors
       Favor An Injunction .............................................................19

C.    The Relief Would Intolerably Burden Comity.................................20

    1.    Comity Here Must Be Analyzed Under The
       Fundamental Principles Articulated By The Ninth
       Circuit...................................................................................20

    2.    Adjudicative Comity Precludes Injunctive Relief................21

    3.    The Act of State Doctrine Precludes Injunctive
       Relief ....................................................................................23

IV.    THE PI ORDER SHOULD BE VACATED AND INJUNCTIVE
    RELIEF AGAINST THE COURT LIQUIDATOR AND HIS
    COUNSEL BE DENIED BECAUSE AN INJUNCTION
    AGAINST THEM WOULD BE FUTILE AND
    UNENFORCEABLE ........................................................................... **23**

CONCLUSION ............................................................................................ **25**

## Table of Authorities

**Cases**

*Allegaert v. Perot,*
  548 F.2d 432 (2d Cir. 1977) ........................................................................ 13, 14

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*
  *(In re Vitamin C Antitrust Litig.),* 8 F.4th 136 (2d Cir. 2021) .................... 22

*Best Med. Belg., Inc. v. Kingdom of Belg.,*
  913 F. Supp. 2d 230 (E.D. Va. 2012) ........................................................ 23

*Biltmore Associates, LLC v. Twin City Fire Ins. Co.,*
  572 F.3d 663 (9th Cir. 2009) ...................................................................... 18

*Bungie, Inc. v. Thorpe,*
  2023 U.S. Dist. LEXIS 28666 (N.D. Cal. Feb. 21, 2023) .......................... 25

*Chapman v. Deutsche Bank Nat'l Tr. Co.,*
  651 F.3d 1039 (9th Cir. 2011) ........................................................... 3, 15, 22

*Chevron Corp. v. Camacho Naranjo,*
  667 F.3d 232 (2d Cir. 2012) ...................................................................... 22

*Cleveland v. Chamberlain,*
  66 U.S. (1 Black) 419 (1862) .................................................................... 11

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.,*
  960 F.3d 549 (9th Cir. 2020) ...................................................................... 21

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) .................................................................................... 24

*Decker Coal Co. v. Comm. Edison Co.,*
  805 F.2d 834 (9th Cir. 1986) ...................................................................... 24

*E. & J. Gallo Winery v. Andina Licores S.A.,*
  446 F.3d 984 (9th Cir. 2006) ................................................................ 18, 19

*Gilbane Fed. v. United Infrastructure Projects FZCO,*
  2014 U.S. Dist. LEXIS 135841 at *12 (N.D. Cal. Sept. 24 .................... 21

*Goncalves v. Rady Children's Hosp. San Diego,*

  865 F.3d 1237 (9th Cir. 2017) .......................................................................... 3, 16, 19, 23

*Google LLC v. Equustek Sols. Inc.,*

  2017 U.S. Dist. LEXIS 182194 (N.D. Cal. Nov. 2, 2017) ...................................................... 10

*Hagerstown Fiber Ltd. P'ship v. Carl C. Landegger,*

  277 B.R. 181 (Bankr. S.D.N.Y. 2002) ........................................................................... 13

*Hall Street Assocs., L.L.C. v. Mattel, Inc.,*

  552 U.S. 576 (2008) .............................................................................................. 10

*Harris v. Wittman*

  (In re Harris), 590 F.3d 730 (9th Cir. 2009) ................................................................... 23

*Hilao v. Estate of Marcos*

  *(In re Estate of Marcos Human Rights Litig.),* 94 F.3d 539 (9th Cir. 1996) ...................... 24, 25

*Huawei Tech. Co. v. Samsung Electronics Co.,*

  2018 U.S. Dist. LEXIS 63052 at *15 (N.D. Cal. Apr. 13, 2018) ............................................ 18

*In re EPD Inv. Co., LLC,*

  821 F.3d 1146 (9th Cir. 2016) ......................................................................... 2, 12, 19

*KCG Ams. LLC v. Zhengquan Zhang,*

  2017 U.S. Dist. LEXIS 54746 (N.D. Cal. Apr. 10, 2017) ....................................................... 8

*Microsoft Corp. v. Motorola, Inc.,*

  696 F.3d 872 (9th Cir. 2012) ................................................................................... 18

*Monteverde, McAlee, Fitzpatrick, Tanker & Hurd, P.C.,*

  223 B.R. 755 (D. Nev. 1998) ................................................................................... 25

*Mujica v. AirScan Inc.,*

  771 F.3d 580 (9th Cir. 2014) ............................................................................. 20, 21

*Muskrat v. U.S.,*

  219 U.S. 346 (1911) ............................................................................................ 12

*Oetjen v. Central Leather Co.,*

  246 U.S. 297 (1918) ......................................................................................... 11, 22

*Omeluk v. Langsten Slip & Batbyggeri A/S*,

    52 F.3d 267 (9th Cir. 1995) .................................................................................. 24

*Poe v. Ullman*,

    367 U.S. 497 (1961) ........................................................................................... 11

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,

    324 U.S. 806 (1945) ............................................................................................. 8

*Provident Life & Acci. Ins. Co. v. Transamerica-Occidental Life Ins. Co.*,

    850 F.2d 1489 (11th Cir. 1988) .................................................................... 10, 11

*Reebok Int'l Ltd. v. McLaughlin*,

    49 F.3d 1387 (9th Cir. 1995), *cert. denied,* 516 U.S. 908 (1995) ............................. 25

*Reno Air Racing Ass'n v. McCord*,

    452 F.3d 1126 (9th Cir. 2006) ............................................................................... 8

*Rep. of the Philippines v. Marcos*,

    862 F.2d 1355 (9th Cir. 1988) (en banc)*cert. denied*, 490 U.S. 1035 (1989) ............ 23

*Sanguine, Ltd. v. United States Dep't of Interior*,

    798 F.2d 389 (10th Cir. 1986) ............................................................................... 7

*Schwarzenegger v. Fred Martin Motor Co.*,

    374 F.3d 797 (9th Cir. 2004) ............................................................................... 25

*Sdla Courier Serv., Inc. v. City Capital Ny LLC*,

    2024 U.S. Dist. LEXIS 216581 (C.D. Cal. Sep. 24, 2024) ...................................... 8

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*,

    899 F.3d 1064 (9th Cir. 2018) ............................................................................. 23

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*,

    652 F.2d 852 (9th Cir. 1981) ............................................................................... 18

*SEC v. Ross*,

    504 F.3d 1130 (9th Cir. 2007) ............................................................................... 1

*U.S. v. Johnson*,

    319 U.S. 302 (1943) ........................................................................................... 11

*UBS Fin. Servs. v. Hergert*,

    2013 U.S. Dist. LEXIS 155753 (W.D. Wash. 2013) ...................................................9

*Wash. Envtl. Council v. Bellon*,

    732 F.3d 1131 (9th Cir. 2013) ...........................................................................11

*Wilson Employees' Rep. Plan v. Wilson & Co.*,

    53 F. Supp. 23 (S.D. Cal. 1943) ..........................................................................7

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*,

    2022 U.S. App. 23575 (6th Cir. 2022) ..................................................................7

*Winter v. NRDC, Inc.*,

    555 U.S. 7 (2008) ..........................................................................................10

*Zepeda v. United States Immigration & Naturalization Serv.*,

    753 F.2d 719 (9th Cir. 1983) ............................................................................25

**Statutes**

9 U.S.C. §203 ......................................................................................................10

9 U.S.C. §4 .........................................................................................................10

**Rules**

Cal. R. Prof. Conduct 3.3(a)(2) .................................................................................9

Fed. R. Civ. P. 13 ...............................................................................................18

Fed. R. Civ. P. 65 ...........................................................................................8, 24

**Other**

Arbitrazh Procedure Code of the Russian Federation ("APC") (2002) ...............................*passim*

Federal Statute of the Russian Federation No. 127-FZ "On insolvency (bankruptcy)"

    (RBL) (2002) ...........................................................................................*passim*

Ruling of the Arbitrazh Court of Ural Circuit N F09-2832/14, on the cassation appeal of

    King & Spalding, LLC, case no. A47-6500/2013 (April 10, 2015) .........................13

Ruling of the 9th Appellate Court, case No. No. A40-58566/19 (February 7, 2023) ...................13

Ruling of the Arbitrazh Court of North-West Circuit on the OOO "Group 3" bankruptcy

    petition, Case no. A56-87399/2016 (June 17, 2019) ............................................13

Overview of Cases of the Supreme Court of the Russian Federation, No. 1 (2024),

    approved by the Presidium of the RF Supreme Court (May 29, 2024) ................................... 15

Intervenor NO Fond Pravoslavnogo Televideniya ("Pravoslav" or "Intervenor") submits this Memorandum in support of its Motion to Vacate the Preliminary Injunction and Deny Injunctive Relief.  Pravoslav is a creditor of OOO Google and has an interest in protecting its bankruptcy estate from Google Ireland Limited ("Google Ireland")'s unprecedented attempt to interfere with a Russian court and its appointed trustee, Valery Talyarovsky, now acting as liquidator ("Court Liquidator").  The Court lacks subject matter jurisdiction over this manufactured suit, because there is no genuine case or controversy between Google Ireland and OOO Google, and no personal jurisdiction over the Court Liquidator and his counsel—the target of injunctive relief.[1]  The Court should vacate the preliminary injunction, deny all relief, and dismiss the case.

## **INTRODUCTION**[2]

Google Ireland failed to disclose material facts and law which led the Court into entering an anti-suit and anti-anti-suit TRO (ECF 18) and then the Preliminary Injunction ("PI Order") (ECF 37).  Critically, it did not explain that the Court Liquidator—not OOO Google—is the claimant (as "Liquidator of OOO Google, Talyarovsky V.A.") in the two Russian suits.  The TRO and now PI Order enjoining litigation subject to the exclusive jurisdiction of Russian bankruptcy courts is an affront to the Russian court and international comity.  At the request of the Court Liquidator, the Russian court issued its own anti-suit injunctions on January 30, 2025 ("Russian Injunctions") (ECF 31-8 and 31-9).  The Russian Injunctions are designed to protect the Russian court's exclusive jurisdiction over bankruptcy court claims, and the Court Liquidator in fulfilling his duties to the Russian court.  As a result, there are now competing U.S. and Russian anti-suit injunctions, when there should have been none.  The Ex Parte Application and PI Motion (ECF 5) are based on fundamental mistruths and profoundly flawed.

---

[1] As stated in the Motion to Intervene, Pravoslav objects to the personal jurisdiction of this Court and does not consent to the Court's jurisdiction over any issues other than to resolve its Motion to Vacate.  *See SEC v. Ross*, 504 F.3d 1130, 1149-1150 (9th Cir. 2007).

[2] Unless otherwise stated, all emphases are added, and all citations, quotation marks, footnotes, ellipses and brackets are omitted.

*First,* Valery Talyarovsky, as the "Liquidator of OOO Google," is the claimant in the "Sham Transaction Claims" and the "Subsidiary Liability Claims." These claims were brought (1) to set aside a sham 2018 self-dealing transaction between Google Ireland and OOO Google, which diverted almost a billion dollars of profit from OOO Google, and (2) to assert subsidiary (secondary) liability claims against Google Ireland and certain of OOO Google's former controlling persons who caused its insolvency. Thus, Google Ireland did not even name the proper party, in an obvious attempt to evade the jurisdiction and comity questions that preclude the relief it seeks. Added to that, the Ex Parte TRO Application did not disclose that the Court Liquidator, as Google Ireland knows, requires Russian bankruptcy court approval to pay counsel in foreign litigation, which could not have been obtained by the February 3, 2025 opposition filing date, if OOO Google or the Court Liquidator wanted to participate.

*Second,* by failing to explain the claimant's identity in Russia, Google Ireland distorted the nature of the relief sought there. The Court Liquidator is not seeking to enforce an obligation under the 2018 RSA (as defined in the Ex Parte Application, ECF-5, at 4), which contained a purported arbitration provision between OOO Google and Google Ireland, but to set it aside. The Court Liquidator is not subject to an arbitration clause when seeking to set aside a sham or invalid contract under Russian law, just like a U.S. bankruptcy trustee would not be.[3] Even worse, Google Ireland has manufactured subject matter jurisdiction through the ruse of asserting there is a genuine case or controversy between it and OOO Google. There is none. OOO Google has no interest in arbitration, because it is not the claimant in Russia, and any award would not be enforceable there. Google Ireland's real dispute is with the Court Liquidator. Federal courts lack

---

[3] Under U.S. law, fraudulent transfer and avoidance claims are not subject to arbitration, because they are not derivative of the debtor's rights and are brought for the benefit of the creditors. *In re EPD Inv. Co., LLC*, 821 F.3d 1146, 1149, 1152 (9th Cir. 2016) (confirming bankruptcy trustee "was not bound to arbitrate the fraudulent conveyance claims, because he was asserting claims that either belonged to the estate's creditors or would benefit them, and no creditor had been a party to the arbitration agreement").

subject matter jurisdiction over contrived or collusive claims, and this Court furthermore lacks personal jurisdiction over the Court Liquidator, who is not even named as a defendant.

**Third,** when failing to explain the Russian plaintiff's identity and the nature of the relief sought, Google Ireland concealed that the Sham Transaction and Subsidiary Liability Claims are subject to the exclusive jurisdiction of Russian bankruptcy courts, similar to set-aside claims in the United States. This was explained by the Court Liquidator to Google Ireland's Russian counsel in correspondence which Google Ireland failed to disclose. (*See* ECF 31-6, Talyarovsky Letter.) Google Ireland's counsel, King & Spalding, was itself a losing defendant in Russian bankruptcy proceedings, described herein, which held that arbitration clauses do not apply to bankruptcy trustee set-aside claims. Nonetheless, this well-known case, affirmed at all appeal levels, was not disclosed. Given the Russian court's exclusive jurisdiction, Google Ireland cannot succeed under the traditional or Ninth Circuit anti-suit injunction tests based on the purported arbitration clause.

**Fourth,** despite this Court having held a status conference on supplemental briefing on comity issues in the related matter, just two days later, Google Ireland's Ex Parte TRO Application did not even discuss the comity doctrine of "exclusive prior jurisdiction" which applies to *in rem* proceedings, such as the OOO Google bankruptcy.[4] It stands comity on its head for this Court to interfere in Russian court bankruptcy proceedings governed by Russian law and conducted by the Court Liquidator to set aside self-dealing transactions and recover from OOO Google's former controlling persons for procuring its insolvency. It also destroys any chance of success under either anti-suit injunction test based on comity.

This Court should vacate the PI Order, deny injunctive relief, including against the Court

---

[4] Under the "prior exclusive jurisdiction doctrine … when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res* … [T]he doctrine is … a mandatory jurisdictional limitation." *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F.3d 1039, 1043 (9th Cir. 2011). *See also Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1253 (9th Cir. 2017) ("The prior exclusive jurisdiction doctrine … applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates.").

1    Liquidator and his counsel, and dismiss the case.

2    ### RELEVANT FACTUAL BACKGROUND[5]

3    Google Ireland, an Irish entity, is an indirect wholly owned subsidiary of Google, LLC

4    ("Google").  It is suing OOO Google, a Russian entity, asking this Court to enjoin the Russian

5    bankruptcy court appointed liquidator of OOO Google from prosecuting the Sham Transaction

6    Claims (ECF 5-12) and Subsidiary Liability Claims (ECF 5-11, at 6, Claims 2, 4, and 5) against

7    Google Ireland (the "Liquidator Claims").[6]  These claims are the sole subject of its request for

8    injunctive relief.  Pravoslav is a creditor of OOO Google.  (*See* Iliasova Dec. ¶¶16-19.)

9    **A.  OOO Google's Bankruptcy**

10    OOO Google initiated its bankruptcy on May 18, 2022, by publishing a notice of intent

11    to file for voluntary bankruptcy, which it then did on June 16, 2022.  On October 18, 2023, after

12    the completion of the supervision procedure to determine OOO Google's financial condition,

13    conducted by bankruptcy trustee Valeriy Talyarovsky ("Talyarovsky") as the court appointed

14    supervisor, the Russian bankruptcy court declared OOO Google insolvent and placed it into

15    liquidation.[7]  Talyarovsky was appointed by the Russian court as "liquidator of OOO Google."

16    (Starzhenetskiy Dec. ¶24.)

17    ───────────────────

18    [5] The Facts are based in part on the supporting declarations of Anastasiia Iliasova ("Iliasova Dec.")

19    and Pravoslav's Russian law expert, Professor Starzhenetskiy ("Starzhenetskiy Dec.").

20    [6] The Sham Transaction Claims translation submitted by Google Ireland (ECF 5-12) incorrectly

21    translates Talyarovsky's position as "Bankruptcy Manager".  It should be translated as "Court

22    Liquidator", same as it was translated in the Subsidiary Liability Claims translation submitted by

23    Google Ireland (ECF 5-11).  *See* Starzhenetskiy Dec. fn. 3.

24    [7] Under Russian bankruptcy law, a trustee performs three functions during consecutive stages of

25    the process: supervision, external management, and lastly, liquidation.  These functions may be

26    performed by the same or different persons, as appointed by the bankruptcy court at each stage of

27    the process.  The external management procedure is not always used, and it was not used in the

28    OOO Google bankruptcy case.  (Starzhenetskiy Dec. ¶25.)

**B.  <u>The Sham Transaction Claims</u>**

On October 18, 2024, the Court Liquidator (appearing as "Liquidator of OOO Google, Talyarovsky V.A.") filed an application to set aside certain transactions between Google Ireland and OOO Google, including: (a) the agreement on termination of the parties' Amended and Restated Reseller Agreement dated December 23, 2009 ("2009 RSA") (ECF 5-25), dated April 24, 2018 ("2018 Termination Agreement") (ECF 5-26); (b) the substitute Google Resale Agreement between the same parties, dated April 24, 2018 ("2018 RSA") (ECF 5-27); and (c) payments made pursuant to the 2018 RSA.  Collectively, these transactions constitute the "Sham 2018 Transaction," and the set-aside proceeding consists of the "Sham Transaction Claims" (ECF 5-12). (Starzhenetskiy Dec. ¶27.)

As alleged, Google Ireland sold advertising space to Russian clients through OOO Google pursuant to, first, the 2009 RSA and, later, the 2018 RSA.  (Complaint, ¶¶4, 41-44.)  The 2009 RSA provided for approximately 20% gross profit margin for OOO Google.  (*Id*. ¶42.c.)  In 2018, the parties suddenly terminated the 2009 RSA (*id*. ¶43), and replaced it with the 2018 RSA, which reduced the gross profit margin for OOO Google to between 1.5% and 3%.  (*Id*. ¶44.d.)  The obvious purpose of the Sham 2018 Transaction was to divert all profits of OOO Google outside of Russia, to defeat potential creditor claims.[8]  The Court Liquidator brought the Sham Transaction Claims to void the Sham 2018 Transaction and recover the profits diverted out of Russia to defeat OOO Google's creditors. (*See* ECF 5-12.)  On November 8, 2024, the court scheduled a hearing on the Sham Transaction Claims for January 31, 2025.  On January 24, 2025, Google Ireland filed a motion to dismiss the Sham Transaction Claims, alleging lack of jurisdiction.  On January 31, 2025, the Russian court adjourned the hearing to April 16, 2025.  (Starzhenetskiy Dec. ¶28.)

---

[8] Contrary to the declaration of Google Ireland director Cunningham (ECF 5-24), the 2018 RSA could not have been an "arms-length" transaction.  Google controlled both Google Ireland and OOO Google.  The idea that these two Google controlled subsidiaries sat across a bargaining table armed with independent counsel to "negotiate" abandonment of OOO Google's profits or an arbitration clause for California is ludicrous.

C.  **The Subsidiary Liability Claims**

On October 18, 2024, the Court Liquidator (appearing as "Liquidator of OOO Google, Talyarovsky V.A.") filed an application for subsidiary liability of OOO Google's controlling persons, which comprised six distinct claims based on different legal and factual grounds, including three claims involving Google Ireland ("Subsidiary Liability Claims") (ECF 5-11, at 6, Claims 2, 4, and 5).[9]  Of the three claims against Google Ireland, only one (Claim 2), which also names three former OOO Google directors and officers as co-defendants, is based on "the conclusion and performance of the null and void [Sham 2018 Transaction], which led to the insolvency of the Debtor, as well as [which] was the basis for the withdrawal of its assets."  (*Id.*) The other two claims against Google Ireland are based on "[unlawful] termination of Google's commercial activities in [Russia], which led to the … termination of business activities and the inability to satisfy creditors' claims" (*id*. Claim 4), and the "unlawful blocking of YouTube channels of numerous Russian media outlets and the refusal … to comply with legally binding court orders to restore access to them" (*id*. Claim 5).  Neither Claim 4 nor 5 is based on the 2018 RSA.  On November 8, 2024, the court scheduled a preliminary hearing on the Subsidiary Liability Claims for January 31, 2025, which was then adjourned to April 18, 2025.  (Starzhenetskiy Dec. ¶29.)

D.  **The Court Liquidator May Not Pay Foreign Counsel Without Court Approval**

RBL Art. 20.7(3) limits funds that the liquidator may pay from the bankruptcy estate to providers such as foreign counsel, such as to represent OOO Google or the Court Liquidator in California.  RBL Art. 20.7(6) provides that the liquidator may exceed that limit only with prior approval of the bankruptcy court.  (Starzhenetskiy Dec. ¶77.)  The Court Liquidator has exceeded that limit and, therefore, is unable to engage and pay U.S. counsel in this case.  (*Id*. ¶79; Iliasova Dec. ¶¶14-15.)  He must apply to the Russian court and prove the need to engage counsel and the reasonableness of its fees, which takes a minimum of three  weeks based on Russian procedures,

[9] The remaining three claims do not involve Google Ireland (*see* ECF 5-11, at 6, Claims 1, 3, 6), and are not subject of this action or the TRO (ECF 18).

and may take months if creditors oppose such application.  (Starzhenetskiy Dec. ¶¶78, 80.)  All of this was known to Google Ireland through its Russian attorneys but not disclosed to the Court.

**E.  <u>The Russian Injunctions</u>**

On January 29, 2025, the Court Liquidator filed, in each proceeding, a motion for an anti-suit injunction to enjoin Google Ireland from continuing any litigation in this Court regarding anti-suit injunctions against the Court Liquidator, his counsel, and representatives of OOO Google, to enjoin them from litigating the Liquidator Claims and any related applications made within the OOO Google bankruptcy.  On January 30, 2025, the Russian bankruptcy court granted the anti-suit injunctions in respect to both Liquidator Claims ("Russian Injunctions") (ECF 31-8, 31-9).

<u>ARGUMENT</u>

This Court should vacate the Preliminary Injunction, deny all injunctive relief, including against the Court Liquidator and his counsel from prosecuting the Liquidator Claims, and dismiss the case.

**I.   <u>THE PI ORDER SHOULD BE VACATED BECAUSE PRAVOSLAV'S INTERESTS WERE NOT ADEQUATELY REPRESENTED WHEN ENTERED</u>**

An "intervenor whose interests were inadequately represented by a party defendant prior to intervention may seek to vacate decrees entered before intervention was granted." *Sanguine, Ltd. v. United States Dep't of Interior*, 798 F.2d 389, 390, 391 (10th Cir. 1986) (affirming granting of intervenor's motion to vacate a prior entered consent decree and permanent injunction because the "prejudice to the intervenors can be avoided only by setting aside the prior judgment and allowing the opportunity to litigate the merits of the case.").  *See also Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 2022 U.S. App. 23575, at *13 (6th Cir. 2022) ("[I]njunction must be vacated because [inter alia] PTP's intervention changes the landscape and requires reconsideration of the district court's partial grant of summary judgment and issuance of an injunction."); *Wilson Employees' Rep. Plan v. Wilson & Co.*, 53 F. Supp. 23, 40 (S.D. Cal. 1943) ("[I]ntervenor is entitled to a decree vacating and setting aside the injunction heretofore granted herein and dismissing the complaint.").  The TRO was granted ex parte and the PI Order was granted absent an appearance by OOO Google.  Given no party challenged Google Ireland's

motion (or even appeared), the PI Order should be vacated because Pravoslav's interests were not adequately represented.

**First,** the PI Order should be vacated, because Pravoslav's interests were not adequately represented, because, *ab initio*, no party opposed the TRO and PI Order on the merits, *infra,* and, finally, the PI Order should be vacated for lack of subject matter jurisdiction.

**Second,** the PI Order should be vacated because Pravoslav's interests were not adequately represented, because no party challenged the facial deficiencies of the Ex Parte Application, which resulted in the issuance of the TRO, subsequently converted into the PI Order. "[C]ourts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1128, 1131 (9th Cir. 2006) (noting as improper "the sometimes routine fashion in which TROs are issued to unsuspecting parties"). Rule 65(b)(1)(A) required Google Ireland to submit "specific facts in an affidavit or a verified complaint [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." It did not do so. The Complaint (ECF 1) is not verified, and the Declaration of Google Ireland attorney Radin (ECF 5-1) is devoid of any "specific facts … clearly show[ing] that immediate and irreparable injury will result" before OOO Google could be heard in opposition. As a result, the TRO and subsequent PI Order should not have been entered. *See Sdla Courier Serv., Inc. v. City Capital Ny LLC*, 2024 U.S. Dist. LEXIS 216581, *9 (C.D. Cal. Sep. 24, 2024) (denying TRO because plaintiffs failed to "set forth '***specific*** facts in an affidavit or a verified complaint [that] *clearly show* that immediate and irreparable injury will result'") (emphasis in original); *KCG Ams. LLC v. Zhengquan Zhang*, 2017 U.S. Dist. LEXIS 54746, *4 (N.D. Cal. Apr. 10, 2017) (Davila, J.) (denying TRO because "declaration of Plaintiff's counsel provided with the TRO application is perfunctory"). Mere argument, without a verified complaint or sworn declaration of specific facts, is insufficient.

**Third,** the PI Order should be vacated, because Pravoslav's interests were not adequately protected against Google's unclean hands when it moved ex parte. The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). When seeking

injunctive relief "in an *ex parte* proceeding where notice to the opposing party in the proceeding is not required or given and the opposing party is not present," the tribunal must be informed of "*all* [*known*] *material facts … that will enable the tribunal to make an informed decision*." Cal. R. Prof. Conduct 3.3(d).  A lawyer "shall not … fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Cal. R. Prof. Conduct 3.3(a)(2).  "A party requesting a TRO without first permitting a response from the opposing party … assumes an obligation of *utmost candor* in informing the court of the facts justifying immediate relief." *UBS Fin. Servs. v. Hergert*, 2013 U.S. Dist. LEXIS 155753, at *2 (W.D. Wash. 2013) (denying injunction due to misrepresentations and omissions).

Google Ireland's unclean hands included failing to meaningfully disclose that **(1)** the Court Liquidator, not OOO Google, is the claimant in the Russian claims, and thus there is no genuine case or controversy with OOO Google, which defeats subject matter jurisdiction; **(2)** the Court Liquidator requires Russian bankruptcy court approval to pay U.S. counsel which could not be obtained before the February 3 opposition date; **(3)** the Court Liquidator bringing claims to set aside the Sham 2018 Transaction is not bound by the 2018 RSA arbitration clause, the same as a U.S. bankruptcy trustee would not be, and thus there is no basis for this Court to enjoin the Russian litigation; **(4)** the Russian bankruptcy court exercises exclusive jurisdiction over set-aside and subsidiary liability claims, rendering arbitration clauses unenforceable (as Google counsel King & Spalding well knows, having lost a Russian case as a party against a bankruptcy trustee on this very issue), no different than under U.S. law; and **(5)** this Court should not exercise jurisdiction over *in rem* proceedings before other courts, such as the OOO Google bankruptcy case, based on the "prior exclusive jurisdiction" doctrine.

***In sum,*** the PI Order should be vacated, because Pravoslav's interests were not adequately represented, because no party opposed the Ex Parte Application or the conversion of the TRO into the PI Order, or even appeared.

## II.    INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE GOOGLE IRELAND CANNOT MEET ITS HEAVY BURDEN UNDER THE TRADITIONAL PI TEST

"A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities weighs in its favor, and (4) an injunction is in the public interest." *Google LLC v. Equustek Sols. Inc.,* 2017 U.S. Dist. LEXIS 182194, *3-4 (N.D. Cal. Nov. 2, 2017) (Davila, J.).  A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.,* 555 U.S. 7, 9 (2008).  The PI Order should be vacated and injunctive relief denied, including against the Court Liquidator and his counsel, because Google Ireland cannot meet its heavy burden.

**A.  <u>Google Ireland Cannot Establish Likelihood Of Success On The Merits</u>**

Google Ireland asks this Court to enjoin litigation of the Sham Transaction and the Subsidiary Liability Claims in the Russian bankruptcy court based upon the arbitration clause in the 2018 RSA.  This request is fundamentally flawed, because OOO Google is not the claimant in respect to these claims in Russia, which are not subject to the arbitration provision of the 2018 FSA.  This Court lacks subject matter jurisdiction under the Federal Arbitration Act ("FAA"), Chapter 2 (9 U.S.C. §203) and Google Ireland otherwise fails to establish a likelihood of success on the merits.[10]

**1.  <u>The Court Lacks Subject Matter Jurisdiction</u>**

"Article III, section two of the Constitution limits the exercise of judicial power to 'cases' and 'controversies.'"  *Provident Life & Acci. Ins. Co. v. Transamerica-Occidental Life Ins. Co*., 850 F.2d 1489, 1490 (11th Cir. 1988).  The "case or controversy" requirement under Article III requires that the parties be truly adverse in order to establish subject matter jurisdiction.  The Supreme Court "has found unfit for adjudication any cause that is not in any real sense adversary, that does not assume the honest and actual antagonistic assertion of rights to be adjudicated—a

---

[10] Contrary to the Complaint ¶11, FAA Chapter 1 (9 U.S.C. §4) does not provide an independent basis for subject matter jurisdiction.  FAA Chapter 1 "bestow[s] no federal jurisdiction but rather requires an independent jurisdictional basis."  *Hall Street Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 582 (2008).  Google Ireland does not assert any such basis (*see* Complaint, ¶¶11-14).

1    safeguard essential to the integrity of the judicial process." *Poe v. Ullman*, 367 U.S. 497, 505

2    (1961). *Cf. Cleveland v. Chamberlain*, 66 U.S. (1 Black) 419, 426 (1862) (dismissing appeal

3    because "Chamberlain becomes the sole party in interest on both sides, makes up a record, and has

4    a case made to suit himself, in order that he may obtain an opinion of this court, affecting the rights

5    and interest of persons not parties to the pretended controversy"). The presence of a party whom

6    the plaintiff knows will not participate in order to obtain relief against a third party undermines the

7    judicial process. "Such a suit is collusive because it is not in any real sense adversary." *U.S. v.*

8    *Johnson*, 319 U.S. 302, 305 (1943).

9    "Courts have found the case or controversy requirement lacking … ***when the defendant***

10   ***has no interest in the case***, when no conflict exists in the case, … ***when there is no conflict in the***

11   ***case because of a defect in the parties*** and when there is no legal relationship between the parties."

12   *Provident Life & Acci. Ins. Co.*, 850 F.2d at 1491. *Provident Life* held "there was no case or

13   controversy between the parties [and] the district court was without jurisdiction" (*id.* at 1493),

14   where, "[i]nstead of bringing an action to determine the rights and obligations between the

15   insurance company and the insured, Provident brought a declaratory judgment action against

16   Transamerica, the other insurance company. The controversy over whether Transamerica wrongly

17   paid benefits to [the insured] is not between Transamerica and Provident, but between

18   Transamerica and [the insured]. Consequently, Transamerica's ***failure to name [the insured] in***

19   ***this action leaves no case or controversy on which to base jurisdiction***." *Id.* at 1491. *Cf. Wash.*

20   *Envtl. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (Under Article III, plaintiff must

21   show that the injury is causally linked to the named defendant's alleged misconduct, "and not the

22   result of misconduct of some third party not before the court.") (citing *Lujan v. Defenders of*

23   *Wildlife*, 504 U.S. 555, 560-61 (1992)).

24   This Court lacks jurisdiction based on the absence of a case or controversy for two reasons.

25   ***First***, OOO Google is not the claimant in any of the Russian claims: the Court Liquidator

26   brought the claims in his capacity as the "Liquidator of OOO Google, Talyarovsky V.A." (*See* ECF

27   5-11, 5-12.) There is no genuine case or controversy between Google Ireland and OOO Google,

28   because OOO Google has not and will not assert claims against Google Ireland. The Liquidator

Claims asserted against Google Ireland belong to the Court Liquidator, who acts on behalf of the creditors.[11]  Google Ireland attempts to manufacture subject matter jurisdiction in order to obtain relief against the Court Liquidator and his counsel, over whom this Court would lack personal jurisdiction if named.  Without the actual competing parties before the Court, there is no legitimate "case or controversy," and this Court lacks jurisdiction.  *Muskrat v. U.S.*, 219 U.S. 346, 356-57 (1911).

**Second,** there was no reason for Google Ireland to file an action to compel OOO Google to arbitrate.  Under the terms of the purported arbitration agreement in the 2018 RSA, all Google Ireland needed to do was serve a demand on OOO Google, which it has done by serving a demand for arbitration dated January 24, 2025.  It can seek to have arbitrators appointed and do whatever it deems appropriate to proceed with its sham arbitration against an entity which will not participate and against which an arbitration award is not enforceable in Russia.  It did not need relief from this Court to do this.

**In sum,** this case is a fabricated dispute to assert claims against OOO Google, which will not appear, in order to obtain an injunction against the Court Liquidator (and his counsel), who is not named and over whom this Court lacks personal jurisdiction.  It must be dismissed.

## 2.   The Russian Court Has Exclusive Jurisdiction Over The Liquidator Claims

Google Ireland cannot establish a likelihood of success on the merits, because the Russian bankruptcy court exercises exclusive jurisdiction over the Liquidator Claims.

**First,** in the Sham Transaction Claims, the Court Liquidator seeks to set aside the Sham 2018 Transaction as invalid, because it was designed to syphon profits away from OOO Google to Google Ireland, leaving OOO Google's bankruptcy estate without sufficient funds to pay creditors.  (*See* ECF 5-12, at 3-7.)  Russian Bankruptcy Law prohibits arbitration of bankruptcy disputes and provides for the exclusive jurisdiction of the Arbitrazh court hearing the bankruptcy case to decide claims for setting aside the debtor's transactions.  (Starzhenetskiy Dec. ¶¶41-45,

---

[11] Under Russian law, creditors have standing to bring set-aside and subsidiary liability claims. (*See* Starzhenetskiy Dec. ¶¶36-40, 57-58.)

citing RBL Art. 33(3) ("A bankruptcy case cannot be referred to arbitration.") and RBL Art. 61.8.)
As Russian courts have repeatedly found, court liquidators are not bound by either a forum or an
arbitration clause in an agreement which they seek to set aside.  (*Id*. ¶¶46-49.)  Google Ireland's
own counsel was itself the losing party in a 2015 Russian case on this very issue.  (*Id*. ¶47, citing
Ruling of the Arbitrazh Court of Ural Circuit, dated April 10, 2015, in case A47-6500/2013 (VS
Ex. 9); *see also id.* ¶48, citing Ruling of the 9th Appellate Court dated February 7, 2023, in case
No. A40-58566/19 (VS Ex. 10) (denying applicability in a set aside claim of a U.K. forum clause
in a legal services agreement), and ¶49, citing Ruling of the Arbitrazh court of North-West Circuit,
dated June 17, 2019, in case No. A56-87399/2016 (VS Ex. 11) (denying applicability of arbitration
clause in cassation appeal from an order voiding transactions of the debtor).  The same rules apply
under U.S. law to bankruptcy trustees in adversary actions to set aside sham contracts and
fraudulent conveyances.  "For the purpose of these claims, the Trustee stands in the shoes of the
creditors, not the debtors.  Only the parties to an arbitration agreement are bound by it.  The
creditors did not sign the arbitration clauses at issue here.  As a result, arbitration agreements
signed by the debtors cannot apply to [these] claims…"  *In re EPD Inv. Co., LLC*, 821 F.3d 1146,
1152 (9th Cir. 2016)[12]; *accord Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977) (same);
*Hagerstown Fiber Ltd. P'ship v. Carl C. Landegger,* 277 B.R. 181 (Bankr. S.D.N.Y. 2002) (same).

---

[12] King & Spalding's Moscow office was a party to legal services agreements with a Russian
company containing arbitration clauses.  When the company went bankrupt, the bankruptcy trustee
applied to the Arbitrazh court to invalidate the agreements and to order King & Spalding to return
the amounts paid under the agreements to the debtor's estate.  King & Spalding moved to dismiss,
arguing, inter alia, that the arbitration clause precluded resolution of the dispute by the Arbitrazh
court.  The Arbitrazh court granted the trustee's claim and denied the motion to dismiss,
specifically holding that applications by the trustee must be decided by the Arbitrazh court within
the debtor's bankruptcy case based on RBL Art. 33(3) and 61.8.  King & Spalding appealed the
Arbitrazh court order to the appellate court and then filed a second-level appeal to the cassation
court.  Both courts upheld the Arbitrazh court order.  (Starzhenetskiy Dec. ¶47.)

**Second,** in the Subsidiary Liability Claims, the Court Liquidator seeks to hold OOO Google controlling persons, including Google Ireland, liable for their roles in orchestrating its insolvency and the syphoning of its assets out of Russia, leaving its creditors without recourse. (*See* ECF 5-11, at 6, Claims 2, 4, and 5.)  Of these three, Claims 4 and 5 are not based on the 2018 RSA, and Google Ireland offers no cognizable theory how they would be subject to its arbitration provision.  The only claim brought by the Court Liquidator based on invalidity of the 2018 RSA is Claim 2, and it is not subject to arbitration under Russian or U.S. law, as explained above. (Starzhenetskiy Dec. ¶¶65-69.)

**Third,** like U.S. bankruptcy courts, Russian bankruptcy courts have exclusive jurisdiction to marshal assets of the debtor, including over claims to void a debtor's sham transactions and claims seeking liability of controlling persons of the debtor who caused its insolvency.  Google Ireland fails to disclose the correspondence between its Russian counsel and the Court Liquidator regarding the Russian bankruptcy court's exclusive jurisdiction to hear the Liquidator Claims. (*See* ECF 31-6, Talyarovsky January 20, 2025 Letter.)  Such exclusive jurisdiction invalidates pre-bankruptcy forum agreements, including arbitration agreements, under Russian law. (Starzhenetskiy Dec. ¶¶52-54.)

Pursuant to mandatory provisions of the Arbitrazh Procedural Code ("APC") and RBL, Russian Arbitrazh courts have exclusive jurisdiction in bankruptcy proceedings to hear both the bankruptcy case itself and separate disputes within the bankruptcy case (adversary proceedings), including claims to void fraudulent and other improper transactions and for subsidiary liability. All bankruptcy disputes are subject to the exclusive jurisdiction of the Arbitrazh court and may not be submitted to arbitration.  (*Id.* ¶¶41-42, citing APC Art. 27(6)(1) and RBL Art. 33(1), (3)). Specifically, applications to void a debtor's fraudulent and other invalid transactions are submitted to the Arbitrazh court where the bankruptcy is filed and resolved within the bankruptcy case.  (*Id.* ¶¶53-54, citing RBL Art. 61.8.)  Claims for subsidiary liability of the debtor's controlling persons are also within the exclusive jurisdiction of the Arbitrazh court in the bankruptcy case.  (*Id.* ¶60, 67-68, citing RBL Art. 61.16(1) ("Applications for subsidiary liability on the grounds provided for in this chapter shall be considered by an Arbitrazh court within the bankruptcy case of the debtor,

1   unless otherwise provided for by this federal statute.”)).

2     The exclusive jurisdiction of the Arbitrazh courts to consider bankruptcy disputes was

3   confirmed by the Russian Supreme Court[13]:

4     The Bankruptcy Law provisions stipulate that thereafter, in the period after the
5   introduction of the first procedure applied in a bankruptcy case, special rules of
    jurisdiction apply both to claims against the debtor and to applications by the
6   bankruptcy manager or an individual creditor aimed at protecting the interests of
    all creditors.  By virtue of such special rules of jurisdiction, relevant applications
7   are considered by the Arbitrazh court in the bankruptcy case ([including] Article
    61.8(1), Article 61.16(1) … and other articles of the Bankruptcy Law).

8   *Id.*, Answer to Question 2, subparagraph 2.

9     Therefore, based on Russian statutory and case law, the Liquidator Claims are subject to

10  the exclusive jurisdiction of the Russian bankruptcy court and cannot be transferred to any other

11  court or arbitration tribunal.  (Starzhenetskiy Dec. ¶¶53-54, 59-60, 68-69.)

12    **3.** **Under The Prior Exclusive Jurisdiction Doctrine, This Court May Not Exercise**

13     **Jurisdiction**

14    Google Ireland does not disclose the vast body of adverse law that U.S. courts will not

15  exercise jurisdiction over *in rem* matters pending before other courts under the “prior exclusive

16  jurisdiction” doctrine.  Under this doctrine, “when one court is exercising *in rem* jurisdiction over

17  a *res*, a second court will not assume *in rem* jurisdiction over the same *res* … [T]he doctrine is …

18  a ***mandatory jurisdictional limitation***.”  *Chapman v. Deutsche Bank Nat’l Tr. Co.*, 651 F.3d 1039,

19  1043 (9th Cir. 2011).  This doctrine applies to bankrupticies, as here.  *See,* e.g.*, Goncalves v.*

20  *Rady Children’s Hosp. San Diego*, 865 F.3d 1237, 1253-54 (9th Cir. 2017) (“The prior exclusive

21  jurisdiction doctrine … applies as well where suits are brought to marshal assets, administer trusts,

22  or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the

23  court must control the property.”).  Given that the “doctrine is a “mandatory jurisdictional

24  limitation,” *Chapman*, at 1043, this Court may not exercise jurisdiction over the Liquidator

25  Claims.

26  _____

27  [13] Overview of Cases of the Supreme Court of the Russian Federation, No. 1 (2024), approved by

28  the Presidium of the RF Supreme Court on May 29, 2024.  (*See* VS Ex. 1, at 21.)

**B.  Google Ireland Cannot Establish It Is Likely To Suffer Irreparable Harm**

Google Ireland's sole argument that it is likely to suffer irreparable harm is based on the loss of its purported right to arbitrate.  Given it has no right to arbitrate against the Court Liquidator, this argument fails.  To the extent Google Ireland wishes to file a meaningless arbitration against OOO Google, it has already done so, *supra*.

**C.  Google Ireland Cannot Establish The Balance Of Hardships And Equities**

The balance of hardships weighs very strongly against injunctive relief.  Again, Google Ireland, an Irish entity, is suing OOO Google, a Russian entity, in a guise to ask this Court to enjoin the Court Liquidator from prosecuting claims against Google Ireland (and other foreign parties).  The sole basis for its suit is the 2018 RSA's arbitration clause with OOO Google, which is not binding on the Court Liquidator under Russian law.  (Starzhenetskiy Dec. ¶¶46-49.)  The Liquidator Claims, the sole subject matter of Google Ireland's action, were filed over three months ago and were scheduled for a January 31 hearing in November 2024.  Google Ireland is participating in the Russian bankruptcy proceedings and has filed a motion to dismiss the Sham Transaction Claims.  It strategically waited until the last minute to file this action, with knowledge that the Court Liquidator would not be able to engage U.S. counsel for OOO Google or himself to participate on such short notice, setting him up for failure under a false pretense of urgency.  The balance of hardships and equities clearly disfavors an injunction.

**D.  Google Ireland Cannot Establish Public Policy Favors An Injunction**

Google Ireland's main pretense to public policy is the U.S. policy favoring arbitration.  Its sole basis for a claim to this policy is the 2018 RSA's arbitration clause, which is not binding on the Court Liquidator under Russian law.  (Starzhenetskiy Dec. ¶¶46-49.)  Google Ireland personally attacks Pravoslav and other persons who have obtained Russian judgments against Google, the subject matter of the related case, as somehow implicating the U.S. policy on Russia and Ukraine.  But, nothing in U.S. policy precludes Russian courts from exercising jurisdiction over companies, like Google or Google Ireland, which do business there, and entering orders compelling them to perform contracts.  Rather, Google Ireland is attempting to excuse the refusal of Google and itself to comply with the Russian Judgments.  As explained in the Jacobson Expert

1  Report filed in the related case (Tsar-ECF 85-16), U.S. sanctions did not preclude Google from

2  complying with these Judgments.  U.S. policy does not favor persons who refuse to comply with

3  judgments.  In contrast, numerous U.S. public policies compel against such an injunction,

4  including the "prior exclusive jurisdiction" doctrine, described above, and principles of comity,

5  discussed herein.

6  **III.    INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE GOOGLE IRELAND**

7  **CANNOT SATISFY THE NINTH CIRCUIT ANTI-SUIT INJUNCTION TEST**

8  As a threshold matter, this Court lacks subject matter jurisdiction over contrived claims,

9  rendering the Ninth Circuit test inapplicable.  Further, while Google Ireland names OOO Google

10  as the defendant, its true purpose is to obtain relief against the Court Liquidator and his counsel.

11  But Google Ireland's Complaint makes no subject matter or personal jurisdictional allegations

12  against the Court Liquidator, and the PI Motion argues none.  Thus, the Court cannot enjoin the

13  Court Liquidator, because only a "federal district court with jurisdiction *over the parties* has the

14  power to enjoin *them* from proceeding with an action in the courts of a foreign country, although

15  the power should be used sparingly."  *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984,

16  989 (9th Cir. 2006).  *See also Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d

17  852, 855 (9th Cir. 1981) (same).  Google Ireland slipped this relief into the proposed TRO, now

18  converted by default into the PI Order, without disclosing this fatal flaw.

19  Ignoring the lack of jurisdiction over the Court Liquidator, Google Ireland argues *Seattle*

20  *Totems* establishes an Anti-Suit Injunction test under Ninth Circuit law.  That is hardly the case.

21  Rather, *Seattle Totems* enjoined the defendant from continuing Canadian claims that were

22  mandatory counterclaims based on the policies underlying Rule 13(a).  It did not involve a forum

23  clause.  More correctly, *Huawei Tech. Co. v. Samsung Electronics Co.,* 2018 U.S. Dist. LEXIS

24  63052 at *15 (N.D. Cal. Apr. 13, 2018) discusses the three-part test applied to Anti-Suit Injunctions

25  in the Ninth Circuit, typically against foreign actions, based on *E. & J. Gallo Winery* and *Microsoft*

26  *Corp. v. Motorola, Inc.,* 696 F.3d 872, 881 (9th Cir. 2012).  Under this test, courts typically analyze

27  three factors: (1) whether the parties and issues are the same; (2) the "*Unterweser* Factors" such

28  as domestic policy, vexation and oppression, and other equitable considerations; and (3) comity.

1  Even if the Court had jurisdiction over the Court Liquidator, which it does not, an anti-suit

2  injunction is not warranted under this three-part test.

3      **A.  <u>The Parties And Issues Are Not The Same</u>**

4          ***First***, the parties are not the same.  The Court Liquidator, as "Liquidator of OOO Google,

5  Talyarovsky V.A.," is the plaintiff in Russia, not OOO Google.  It is fundamental bankruptcy law

6  that a liquidator or trustee is distinct from the debtor.  Russian law clearly distinguishes between

7  the debtor and the liquidator/trustee.  (Starzhenetskiy Dec. ¶¶31-35, and VS Ex. 1, including: RBL

8  Art. 2 (defining debtor and trustee separately); Art. 34 (listing debtor and trustee as separate,

9  distinct parties to a bankruptcy proceeding); Art. 20.3(4) (providing the court liquidator/trustee

10  shall act diligently and reasonably in the interests of debtor, creditors and public)).  It is the same

11  under U.S. law.  *See Biltmore Associates, LLC v. Twin City Fire Ins. Co*., 572 F.3d 663, 670 n.15

12  (9th Cir. 2009) (collecting cases that bankruptcy trustee is distinct from debtor).

13          ***Second,*** the issues are not the same.  The Court Liquidator is not bringing claims under the

14  2018 RSA—he is seeking to set the 2018 RSA aside as an invalid, self-dealing transaction under

15  Russian insolvency law.  Under Russian law, the liquidator acts as a third party, fulfilling its duty

16  to balance the interests of the debtor, creditors and public.  The applications challenging a debtor's

17  transactions must be decided exclusively within the bankruptcy case of the debtor.  (Starzhenetskiy

18  Dec. ¶¶50-54.)  RBL Art. 33(3) ("A bankruptcy case cannot be referred to arbitration."); Art.

19  61.8(1) ("An application to challenge a debtor's transaction is submitted to the Arbitrazh court

20  considering the debtor's bankruptcy case and shall be considered within the debtor's bankruptcy

21  case.") (ECF 31-3).  Google Ireland, through counsel, well knows that Russian law prohibits

22  arbitration of these disputes, given King & Spalding was the losing party in a 2015 case on this

23  very issue (*supra*).  Similarly, under U.S. law, "[f]or the purpose of these claims, the Trustee stands

24  in the shoes of the creditors, not the debtors. … The creditors did not sign the arbitration clauses

25  at issue here.  As a result, arbitration agreements signed by the debtors cannot apply to [these]

26  claims…"  *In re EPD Inv. Co., LLC*, 821 F.3d at 1152.

27      **B.  <u>The *Unterweser* Factors Do Not Favor Google Ireland</u>**

28          The *Unterweser* factors consider "[whether the] foreign litigation . . . would (1) frustrate a

policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem or quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations." *E. & J. Gallo Winery*, 446 F.3d at 990.  None favor Google Ireland.

### 1.   Google Ireland Cannot Establish Domestic Policy Favors An Injunction

The domestic policy to enforce arbitration agreements is not implicated, because neither the Court Liquidator nor OOO Google creditors are parties to the 2018 RSA arbitration clause, and it does not apply to them.  Further, domestic policy is for this Court to not interfere in the Russian bankruptcy under the "prior exclusive jurisdiction" doctrine, which applies to bankruptcies and suits "brought to marshal assets, administer trusts, *or liquidate estates*, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property." *Goncalves,* 865 F.3d at 1253-54.  Enjoining the Court Liquidator and his counsel from participating in the Russian bankruptcy court proceedings would interfere with that court's exclusive jurisdiction over OOO Google's assets.

### 2.   There Is No Vexation or Oppression

OOO Google, then controlled by Google, declared bankruptcy in Russia, where it was incorporated.  Google, represented by two of Russia's most prominent law firms, EPAM and Baker McKenzie, certainly knew that bankruptcy adversary claims, such as the Sham Transaction Claims seeking to set aside the self-dealing 2018 transaction and the Subsidiary Liability Claims against its former controlling persons, including Google Ireland, would be subject to the exclusive Russian court jurisdiction.  Google Ireland's last minute "Hail Mary" Ex Parte Application is a vexatious and oppressive attempt to halt the Russian bankruptcy proceedings in which it participates, having filed a motion to dismiss the Sham Transaction Claims based on the arbitration clause on January 24, which was to be heard at the January 31 hearing, scheduled since November 8, 2024.

### 3.   An Injunction Interferes With The Russian Court's *In Rem* Jurisdiction

This Court's *in rem* or *quasi in rem* jurisdiction over OOO Google is not implicated.  To the contrary, the Russian bankruptcy court exercises *in rem* jurisdiction over OOO Google and the Liquidator Claims, designed to increase its bankruptcy estate assets.

### 4.   Google` Ireland Cannot Establish Equitable Factors Favor An Injunction

No equitable considerations favor interference in a foreign bankruptcy proceeding where the Liquidator Claims are not based upon any agreement with Google Ireland, but Russian **statutory** set-aside and subsidiary liability law.  *See* Sham Transaction Claims (ECF 5-12) (bringing claims under RCC Art. 10 (prohibiting abuse of right) and 168 (invalidity of transactions violating a statute) and RBL Art. 61.2(2) (challenging suspicious transactions of the debtor)) and the Subsidiary Liability Claim (ECF 5-11) (bringing claims under RBL Chapter III.2 (liability of the debtor's executive and other persons in a bankruptcy case)).

### C. The Relief Would Intolerably Burden Comity

In its Ex Parte TRO Application, Google Ireland, as a diversion, frames comity in service to arbitration agreements (ECF 5, at 17), while ignoring that **neither the Court Liquidator nor OOO Google creditors are parties to any arbitration agreement**.  The real target of its injunction request is not OOO Google itself—that is a mere ruse because OOO Google is not the claimant in the Sham Transaction and the Subsidiary Liability Claims.  The real target is the Court Liquidator who was appointed to control the OOO Google's bankruptcy estate and serve the interests of the Russian court, the creditors, and the bankruptcy process under Russian law.  The requested relief is an impermissible intrusion into a Russian bankruptcy proceeding over a Russian entity.

### 1. Comity Here Must Be Analyzed Under The Fundamental Principles Articulated By The Ninth Circuit

"International comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."  *Mujica v. AirScan Inc.*, 771 F.3d 580, 597 (9th Cir. 2014), *cert. denied*, 2015 U.S. LEXIS 7922 (U.S. 2015).  It is "a doctrine of prudential abstention, one that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law."  *Id.* at 598.  It recognizes the policy of "good neighbourliness, common courtesy and mutual respect between those who labour in adjoining judicial vineyards." *Id*.  "The general presumption against extraterritorial application of U.S. law recognizes that United States law governs domestically but

does not rule the world. … Comity similarly rests on respect for the legal systems of members of the international legal community." *Id*. at 605.

Google Ireland (falsely) asserts that its requested injunctive relief would only enjoin "proceedings in a foreign forum" (i.e., the Liquidator Claims) that are brought in violation of the "parties' contractually agreed-upon forum" (i.e., arbitration in California), and argues that courts in this Circuit have established that an anti-suit injunction that merely gives effect to the parties' forum agreement "actually advances, rather than offends, international comity." *Gilbane Fed. v. United Infrastructure Projects FZCO*, 2014 U.S. Dist. LEXIS 135841 at *12 (N.D. Cal. Sept. 24, 2014 (citing *Gallo*, 446 F.3d at 994, and progeny). Without an agreement to arbitrate binding on the Court Liquidator, however, this argument fails, setting aside the Court Liquidator acts based on the appointment of the Russian court. What applies in this case are the fundamental principles of international comity which preclude interfering with a foreign bankruptcy trustee handling a foreign entity's bankruptcy estate matters in a foreign court.

### 2. <u>Adjudicative Comity Precludes Injunctive Relief</u>

At issue here is adjudicative comity, "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 565-66 (9th Cir. 2020). Under adjudicative comity, courts weigh "several factors, including **[1]** the strength of the United States' interest in using a foreign forum, **[2]** the strength of the foreign governments' interests, and **[3]** the adequacy of the alternative forum." *Mujica*, 771 F.3d at 603. Courts often consider various non-exclusive factors when balancing the interests of the U.S. and foreign governments, including the location of the conduct in question, the nationality of the parties, the character of the conduct in question, and applicable policy interests of the countries. *Id.* at 604.

Courts have broad discretion in denying relief based on adjudicative comity. *Mujica*, 771 F.3d at 597. In this case, the weak American interests, strong foreign interests, and undisputed adequacy of the Russian bankruptcy court to handle adversary proceedings under Russian bankruptcy law within the bankruptcy proceeding of a Russian company, all compel denying relief.

***First,*** the U.S. has no interest in interfering in the exclusive jurisdiction of the Russian

court over the OOO Google bankruptcy estate. Google Ireland is not a U.S. entity, and no U.S. nationals are parties. OOO Google's bankruptcy and the subject claims have no nexus to the U.S. All activity at issue occurred abroad, including the Sham 2018 Transaction and Google Ireland's actions giving rise to potential subsidiary liability, and the Court Liquidator brought the subject claims against Google Ireland within OOO Google's bankruptcy case in Russia. U.S. courts routinely dismiss for comity when the "activity at issue occurred abroad" and the parties are foreign, such as here. *Mujica*, 771 F.3d at 605 (citing cases); *see also Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 8 F.4th 136, 160 (2d Cir. 2021) ("[T]hat the nationalities of the parties and the location of the [alleged] conduct are foreign weigh in favor of dismissal under international comity principles.").

**Second,** in contrast, the Russian court has a compelling interest in its *in rem* jurisdiction over the bankruptcy estate of OOO Google, a Russian entity, and claims of its Court Trustee and Russian creditors to recover assets and impose subsidiary liability. Under the comity doctrine of "exclusive prior jurisdiction," "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res* … [T]he doctrine is … a ***mandatory*** jurisdictional limitation." *Chapman*, 651 F.3d at 1043. This doctrine applies to bankruptcies, as here. *See*, e.g., *Goncalves*, 865 F.3d at 1253-54 ("The prior exclusive jurisdiction doctrine … applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property.").

**Third,** Google Ireland has elected to litigate the Liquidator Claims in the OOO Google bankruptcy by filing objections, which the Russian court is exclusively competent to decide. The U.S. has no interest in serving as a global do-over court for foreign affiliates of foreign companies that voluntarily declare bankruptcy in a foreign forum. *See Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (denying injunction because the U.S. courts are not the "definitive international arbiter of the fairness and integrity of the world's legal systems"). It would be a gross interference to enjoin the Russian court appointed Liquidator from pursuing claims subject to adjudication by the Russian bankruptcy court within a pending Russian case. *Cf. Oetjen v. Central*

*Leather Co.*, 246 U.S. 297, 304 (1918) ("[T]o permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations.").

 **In sum,** every comity factor under *Mujica* supports denying injunctive relief enjoining a Russian court appointed bankruptcy liquidator and his counsel from pursuing adversary claims within a pending bankruptcy case and the adjudication by the Russian bankruptcy court.

   **3. The Act of State Doctrine Precludes Injunctive Relief**

 Similar to comity, pursuant to the Act of State doctrine, a U.S. court "will not sit in judgment on the acts of the government of another done within its own territory." *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1069 (9th Cir. 2018) (affirming dismissal based upon doctrine).  The purpose "is to keep the judiciary from embroiling the courts and the country in the affairs of the foreign nations whose acts are challenged."  *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1360 (9th Cir. 1988) (en banc), *cert. denied*, 490 U.S. 1035 (1989).  Google Ireland's requested relief impermissibly interferes with the Russian court's exercise of its *in rem* bankruptcy jurisdiction over a Russian entity. The Sham Transaction and Subsidiary Liability Claims are not private party commercial disputes, but part of a bankruptcy in which the Court Liquidator has public-law status and performs public nature functions.  (Starzhenetskiy Dec. ¶¶33-35.)  Similarly, in the U.S., court appointed trustees and their attorneys perform public functions, including when prosecuting set-aside actions.  *See Harris v. Wittman (In re Harris)*, 590 F.3d 730, 743 (9th Cir. 2009) (holding bankruptcy trustee and attorney prosecuting fraudulent conveyance action enjoy quasi-judicial immunity).  Here, the Act of State doctrine bars this Court from blocking a Russian court from conducting its bankruptcy proceedings through a back door injunction against the Court's Liquidator.  *See Best Med. Belg., Inc. v. Kingdom of Belg.*, 913 F. Supp. 2d 230, 241 (E.D. Va. 2012) (holding "individuals operating in a capacity as officers of a [Belgian] judicial body … in their administration of BMBSA and rejection of Plaintiffs' proposed restructuring plans is beyond the jurisdiction of this Court").

**IV. THE PI ORDER SHOULD BE VACATED AND INJUNCTIVE RELIEF AGAINST THE COURT LIQUIDATOR AND HIS COUNSEL BE DENIED BECAUSE AN**

1    **INJUNCTION AGAINST THEM WOULD BE FUTILE AND UNENFORCEABLE**

2    The PI Order should be vacated and injunctive relief against the Court Liquidator and his

3    counsel denied based upon lack of personal jurisdiction and futility.  While Rule 65(d) allows

4    making an "injunction against [OOO Google] binding upon persons 'in active concert or

5    participation with' [OOO Google] who have actual notice of the injunction, the district court went

6    further by [including the Court Liquidator and his counsel in the] injunction.  However, in order

7    to enforce this injunction against [the Court Liquidator and his counsel], through, for example,

8    contempt proceedings, the district court would have to have personal jurisdiction over [them]."

9    *Hilao v. Estate of Marcos (In re Estate of Marcos Human Rights Litig.)*, 94 F.3d 539, 544-545 (9th

10   Cir. 1996).  "An injunction against [the Court Liquidator and its counsel] in the absence of personal

11   jurisdiction over it would be futile, as the court would be powerless to enforce its injunction."  *Id.*

12   at 545.  Thus, it must be vacated.

13   There are two types of personal jurisdiction under the Due Process Clause of the Fifth

14   Amendment: general and specific.  Google Ireland does not allege general jurisdiction based upon

15   a defendant's "affiliations with the State [being] so 'continuous and systematic' as to render them

16   essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  For

17   specific jurisdiction, there must be "a ***strong relationship*** between … the defendant's forum

18   contacts and the cause of action."  *Decker Coal Co. v. Comm. Edison Co.*, 805 F.2d 834, 839 (9th

19   Cir. 1986).  For a plaintiff to sustain its burden to establish specific personal jurisdiction:

20   (1)  The non-resident defendant must purposefully direct his activities or
21   consummate some transaction with the forum or resident thereof; or perform some
     act by which he purposefully avails himself of the privilege of conducting activities
22   in the forum, thereby invoking the benefits and protections of its laws;

23   (2) the claim must be one which arises out of or relates to the defendant's forum-
     related activities; and
24
     (3) the exercise of jurisdiction must comport with fair play and substantial justice,
25   i.e. it must be reasonable.

26   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  "If any of the three

27   requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process

28   of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).  Google

Ireland has failed to plead *any* facts supporting these required elements.

**First,** lacking personal jurisdiction over the Court Liquidator and his counsel, the "court should not issue an unenforceable injunction: The rule that a court of equity will not issue an unenforceable decree of injunction comprehends as a reason for denying injunctive relief that the court . . . does not have the means to punish disobedience once discovered." *In re Estate of Marcos Human Rights Litig.* 94 F.3d at 548, 545 (cleaned up) (holding court "abused its discretion by issuing a futile injunction"). *See Reebok Int'l Ltd. v. McLaughlin,* 49 F.3d 1387 (9th Cir. 1995) (reversing contempt order and $2.6 million in sanctions where court lacked personal jurisdiction over contemnor), *cert. denied,* 516 U.S. 908 (1995); *Bungie, Inc. v. Thorpe*, 2023 U.S. Dist. LEXIS 28666, *17 (N.D. Cal. Feb. 21, 2023) (denying injunctive relief against a U.K. party where such relief would be futile given lack of personal jurisdiction); *Monteverde, McAlee, Fitzpatrick, Tanker & Hurd*, *P.C.*, 223 B.R. 755, 756 (D. Nev. 1998) ("Since an unenforceable injunction is both pointless and legally disfavored, we will not issue Plaintiff's proposed order").

**Second,** an injunction is futile because a registered creditor with 10% or more of claims can bring the Sham Transaction Claims and any registered creditor can pursue the Subsidiary Liability Claims. (Starzhenetskiy Dec. ¶¶37-38, 57-58.) Thus, even if an injunction was issued, the same claims would be brought by persons outside this Court's jurisdiction.

## CONCLUSION

This Court lacks subject matter jurisdiction because, there is no case or controversy between Google Ireland and OOO Google. OOO Google has no interest in this matter, and Google Ireland has purported to serve its arbitration demand against it. Further, the Court lacks personal jurisdiction over the Court Liquidator and his counsel, this suit's real target. As such, the Court should dismiss the case for lack of jurisdiction, or, at a minimum, deny any claims for injunctive relief, including against the Court Liquidator and his counsel. *See Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); Point IV, *supra*. No injunctive relief against the Court Liquidator or his counsel should be granted.

1    DATED: February 24, 2025                    **MARKS & SOKOLOV LLC**

2                                                By:    /s/   Bruce Marks
                                                 BRUCE MARKS  (pro hac vice)
3                                                THOMAS SULLIVAN (pro hac vice)

4

5                                                **SAWYER & LABAR LLP**

6                                                By:    /s/   Adrian Sawyer
                                                 ADRIAN SAWYER
7

8                                                *Attorneys for Intervenor*
                                                 NO FOND PRAVOSLAVNOGO
9                                                TELEVIDENIYA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28