DAVID K. WILLINGHAM (SBN #198874)
  dwillingham@kslaw.com
SAMUEL DIAMANT (SBN #288738)
  sdiamant@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:   (415) 318-1200
Facsimile:   (415) 318-1300

OLIVIA A. RADIN (*pro hac vice*)
  oradin@kslaw.com
LAURA HARRIS (*pro hac vice*)
  lharris@kslaw.com
**KING & SPALDING LLP**
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone:   (212) 556-2100
Facsimile:   (212) 556-2222

KELLAM M. CONOVER (SBN #295958)
  kconover@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Ave. NW, Suite 900
Washington, DC 20006
Telephone:   (202) 737-0500
Facsimile:   (202) 626-3737

*Attorneys for Plaintiff*
GOOGLE IRELAND LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE IRELAND LIMITED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OOO GOOGLE,<br><br>　　　　Defendant. | Case No. 5:25-cv-00851-EJD<br><br>Hon. Edward J. Davila<br><br>**GOOGLE IRELAND LIMITED'S OPPOSITION TO NO FOND PRAVOSLAVNOGO TELEVIDENIYA'S MOTION TO INTERVENE**<br><br>Date: April 3, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 4, Fifth Floor |

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

    A. Factual background ............................................................................................... 2

    B. Procedural history ................................................................................................. 3

III. LEGAL STANDARD ....................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 4

    A. NFPT lacks the requisite Article III standing ....................................................... 5

    B. NFPT has no cognizable interest for intervention as of right ............................... 7

    C. NFPT has failed to establish any basis for permissive intervention ..................... 8

V. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. California*,
   460 U.S. 605 (1983) .................................................................................................. 10

*Bleavins v. Demarest*,
   196 Cal. App. 4th 1533 (Cal. Ct. App. 2011) ............................................................. 6

*Callahan v. Brookdale Senior Living Cmtys.*,
   42 F.4th 1013 (9th Cir. 2022) ..................................................................................... 9

*Clark v. City of Seattle*,
   899 F.3d 802 (9th Cir. 2018) ...................................................................................... 6

*Ctr. for Biological Diversity v. U.S. EPA*,
   2012 WL 909831 (N.D. Cal. Mar. 16, 2012) ............................................................. 8

*Diamond v. Charles*,
   476 U.S. 54 (1986) .................................................................................................. 4, 5

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ................................................................................... 4, 7

*Gabauer v. Woodcock*,
   425 F. Supp. 1 (E.D. Mo. 1976) ................................................................................. 9

*Glyn v. Roy Al Boat Mgmt. Corp.*,
   897 F. Supp. 451 (D. Haw. 1995) ............................................................................... 7

*Karnoski v. Trump*,
   2017 WL 5668071 (W.D. Wash. Nov. 27, 2017) ....................................................... 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................... 6

*Ministry of Def. & Support for the Armed Forces of the Islamic Rep. of Iran v.
   Cubic Def. Sys., Inc.*,
   385 F.3d 1206 (9th Cir. 2004) .................................................................................. 5, 7

*Ocean Thermal Energy Corp. v. Coe*,
   2020 WL 4108161 (C.D. Cal. Mar. 5, 2020) ............................................................. 8

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) ................................................................................... 4, 8

*Twitch Interactive, Inc. v. Fishwoodco GmbH*,
   2023 WL 7458374 (N.D. Cal. Nov. 9, 2023) ................................................................ 8

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ............................................................................... passim

*United States v. Cermak*,
   2012 WL 5381322 (D. Or. Sept. 26, 2012) ............................................................... 10

*United States v. State of Washington*,
   86 F.3d 1499 (9th Cir. 1996) ...................................................................................... 9

*Wittman v. Personhuballah*,
   578 U.S. 539 (2016) .................................................................................................... 5

*In re Yukos Oil Co.*,
   321 B.R. 396 (Bankr. S.D. Tex. 2005) ........................................................................ 8

**Other Authorities**

Fed. R. Civ. P. 7(a)-(b) ........................................................................................................ 9

Fed. R. Civ. P. 24(a) ....................................................................................................... 4, 7

Fed. R. Civ. P. 24(b) ....................................................................................................... 4, 9

Fed. R. Civ. P. 24(c) ............................................................................................................ 9

Fed. R. Civ. P. 65(d) ............................................................................................................ 6

Plaintiff Google Ireland Limited ("Google Ireland") respectfully submits this opposition to non-party NO Fond Pravoslavnogo Televideniya's ("NFPT") Motion to Intervene. Dkt. 43 ("Mot."). Because the Arbitrazh Court of the City of Moscow (the "Arbitrazh Court") has enjoined Google Ireland from continuing these proceedings against Defendant OOO Google ("Google Russia"), Google Ireland makes only procedural arguments herein against non-party NFPT.

## I.   INTRODUCTION

NFPT seeks to avoid foundational requirements of our adversarial system as part of a coordinated "world legal war" against Google Ireland and its affiliates. Beginning in 2020, NFPT, NAO Tsargrad Media ("Tsargrad"), and ANO TV-Novosti ("TV-Novosti") sued Google Ireland, Google LLC ("Google"), and Google Russia in Russia and obtained judgments imposing astronomical monetary penalties ("*astreintes*"). As a result of the Russian judgments, Google Russia entered into bankruptcy in Russia and is now under the control of a liquidator ("the Liquidator") who is represented by the same Russian law firm as NFPT, Tsargrad, and TV-Novosti. On behalf of Google Russia, the Liquidator has pursued invalid claims in Russia against Google Ireland, relating to contracts executed in 2009 and 2018. Because that action violates Google Russia's agreement to arbitrate all disputes relating to those contracts here, Google Ireland filed this action to prevent further breach.

Google Russia (through the Liquidator) has not yet appeared in this action. Rather, NFPT seeks to mount Google Russia's defense. NFPT first moved to appear as an *amicus*, but this Court properly denied NFPT's motion. *See* Dkt. 39. NFPT now seeks to intervene as a party—despite having no standing or cognizable party interest in this suit, as it must. While NFPT contends it has an interest as Google Russia's creditor, the Ninth Circuit has made clear that "[a] mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself. To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself." *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004). This Court should not allow NFPT to advance purported defenses that Google Russia refuses to advance itself—especially when Google Russia has used its absence to flout this Court's Temporary Restraining Order (Dkt. 18, the "TRO") by obtaining injunctions from a Russian court that purport to restrict Google Ireland from continuing this action.

At bottom, NFPT seeks to have a litigation-by-proxy system under which *non-parties* with no standing in the litigation can pursue substantive legal defenses on behalf of defendants who choose to remain absent. If endorsed by this Court, NFPT's position would incentivize defendants to remain beyond the courthouse doors—where they can violate Court orders without sanction—while shuttling their defenses through creditors. This system would enable defendants to mount their defense by proxy, without risking any costs of having to appear, including discovery burdens, court sanctions, or even losing their own defense. This is not our legal system. Nothing in the federal rules contemplates the massive inefficiencies and inequities (if not chaos) of allowing defendants to remain absent while creditor proxies litigate their defense.

The Court should deny NFPT's motion to intervene.

## II.    BACKGROUND

### A.    Factual background

***The parties and their agreements.*** Google Ireland is an Irish legal entity that, *inter alia*, provides monetization services for YouTube channels and sells advertising space. Dkt. 1 ¶ 4. Defendant Google Russia is a Russian legal entity that purchased services from Google Ireland pursuant to two reseller agreements ("RSAs"), executed in 2009 and 2018. *Id.* Both RSAs are governed by California law and require any disputes arising under the RSAs to be arbitrated in Santa Clara County. *Id.* ¶¶ 4-5.

***Russia's global legal war against Google.*** Beginning in 2020, non-party Google blocked or terminated Google accounts and YouTube channels associated with Russian parties, including NFPT, Tsargrad, and TV Novosti. Dkt. 5 at 5. Google Ireland also stopped providing monetization services to those parties as applicable. *Id.* As part of their avowed "world legal war" against Google Ireland and its affiliates, NFPT, Tsargrad, and TV-Novosti sued Google Ireland, Google, and Google Russia in Russia, in breach of agreed forum-selection clauses, and obtained judgments for astronomical *astreinte* penalties.[1] *Id.* at 1. Google Russia entered into bankruptcy proceedings in Russia after the Russian

---

[1] Google has brought actions against NFPT, Tsargad, and TV-Novosti addressing that breach. *See Google LLC v. NAO Tsargrad Media*, Case No. 5:24-cv-05423-EJD (N.D. Cal.) (consolidated lead case); *Google LLC v. ANO TV-Novosti*, Case No. 5:24-cv-05426-EJD (N.D. Cal.); *Google LLC v. NO Fond Pravoslavnogo Televideniya*, Case No. 5:24-cv-05428-EJD (N.D. Cal.). The Court has ruled that that now-consolidated action is "related to" the present action brought by Google Ireland. Dkt. 17.

Federal Bailiffs Service seized all of Google Russia's liquid assets (over $100 million) to enforce an *astreinte* judgment that, at the time, amounted to less than $12.5 million. *Id.* at 6. Google Russia is currently under the control of the Liquidator, who controls all of its affairs and is represented by NFPT, Tsargrad, and TV-Novosti's attorneys, Art de Lex. *See id.* at 6-7.

**Google Russia's claims in Russia.** To try to expropriate more money from Google entities, in October 2024, the Liquidator asserted claims on behalf of Google Russia against Google Ireland that relate to the RSAs that had been executed years earlier. *Id.* at 7. Google Ireland brought this proceeding to stop Google Russia from pursuing its claims in Russia in breach of the parties' agreement to arbitrate those claims in Santa Clara County, California.

### B.   Procedural history

On January 24, 2025, Google Ireland filed its complaint and an *ex parte* TRO application to prevent Google Russia from further breaching its agreement to arbitrate. Dkts. 1, 5. On January 27, 2025, the Court entered the TRO, setting a deadline of February 3, 2025 for any response by Google Russia in advance of a February 10, 2025 hearing. Dkt. 18. Google Russia, which was duly served with the TRO and all related filings, did not respond by the February 3 deadline. Instead, immediately after receiving notice of the TRO and in direct violation of it, Google Russia sought and received "anti-anti-suit injunctions" ("AASIs") from the Arbitrazh Court. *See* Dkt. 24. While Google Russia remained an absent defendant, NFPT sought leave to file an amicus brief to assert the basic arguments in opposition to injunctive relief that Google Russia might have done. Dkt. 31.

On February 10, 2025, this Court held the show-cause hearing. Google Russia did not appear. The Court converted the TRO to a preliminary injunction and continued the matter to April 3, 2025 to determine whether that injunction should be made permanent. Dkt. 37. The Court also denied NFPT's motion to file an amicus brief. *Id.* After NFPT stated it would consider filing a motion to intervene, the Court set a briefing schedule on any such motion. Dkt. 39. On February 24, 2025, NFPT filed the present Motion along with a proposed Motion to Vacate the Preliminary Injunction, Deny Injunctive Relief, and Dismiss that again makes the jurisdictional arguments that Google Russia might have made had it appeared on its own behalf. *See* Dkt. 43.

Google Russia still has not appeared in this action, and the Court has ordered it to file any response by April 3, 2025. Dkt. 37. While there is a clear procedure for Google Russia to follow if it wishes to appear, NFPT has informed the Court it is "very unlikely" Google Russia will defend itself, as neither Google Russia nor the Liquidator wishes to subject itself to this Court's jurisdiction. *See* Dkt. 31 at 1; Dkt. 43 at 11.

### III.    LEGAL STANDARD

Where an intervenor seeks "to continue a suit in the absence of the party on whose side" it seeks to intervene, it must show "that [it] fulfills the requirements of Art. III" standing in addition to the requirements of Rule 24. *Diamond v. Charles*, 476 U.S. 54, 68 (1986).

Under Rule 24(a), a nonparty is entitled to intervene as a matter of right only when: "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citation omitted); *see* Fed. R. Civ. P. 24(a).

Under Rule 24(b), a non-party may be permitted to intervene where it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In determining whether to exercise its discretion to allow such intervention, "the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

"The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met." *Alisal Water*, 370 F.3d at 919. "Failure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

### IV.    ARGUMENT

NFPT seeks to intervene in a lawsuit concerning Google Russia's breach of its contractual obligation to arbitrate its dispute with Google Ireland under the RSAs. NFPT was not a party to the RSAs. It does not assert any interest in those agreements or where disputes under those agreements are

resolved. Nor does NFPT argue that it will be harmed if Google Russia is held to its contractual promises to arbitrate its claims. NFPT instead contends that, as Google Russia's judgment creditor, it has a party interest in *any* dispute involving Google Russia. The Ninth Circuit has repeatedly "rejected this line of argument." *Ministry of Def. & Support for the Armed Forces of the Islamic Rep. of Iran v. Cubic Def. Sys., Inc.*, 385 F.3d 1206, 1213 (9th Cir. 2004) (citing *Alisal Water*, 370 F.3d at 920-21), *vacated on other grounds*, 546 U.S. 450 (2006). "A mere interest in property that may be impacted by litigation," the Ninth Circuit has explained, simply "is not a passport to participate in the litigation itself." *Alisal Water*, 370 F.3d at 920 n.3 (affirming denial of motion to intervene).

What NFPT seeks is foreclosed by binding case law and would cause a radical restructuring of our adversarial system. Intervention is designed to allow a third party to advance *its own* interests when those interests are distinct and cannot be advanced by a party. NFPT, in contrast, improperly seeks to advance a litigation-by-proxy system in which it can advance *Defendant* Google Russia's interests—while Google Russia remains absent and seeks to tie Google Ireland's hands through an AASI in Russia, in violation of this Court's orders. Rule 24 does not create a loophole for defendants to avoid the consequences of appearing in a lawsuit by having a non-party defend their interests. Intervention is thus unavailable for three independent reasons: (1) NFPT lacks Article III standing; (2) NFPT lacks a sufficient interest for intervention as of right; (3) NFPT cannot identify any common issues necessary for permissive intervention, and even if NFPT could do so, the Court should not exercise its discretion to permit intervention when that would be highly inequitable.

The Court should deny NFPT's motion to intervene.

### A.     NFPT lacks the requisite Article III standing

NFPT seeks to intervene on Google Russia's side and in Google Russia's absence. The Supreme Court has made clear that "whether permissive or as of right," an intervenor who seeks "to continue a suit in the absence of the party on whose side intervention was permitted" must "fulfill[ ] the requirements of Art. III" standing. *Diamond*, 476 U.S. at 68. Standing requires "an 'injury in fact,' that the injury is 'fairly traceable' to the conduct being challenged, and that the injury is likely to be 'redressed' by a favorable decision." *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016) (citation omitted). NFPT cannot make this showing—and, in fact, does not even try.

NFPT faces no cognizable injury—*i.e.* the "invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This action seeks to remedy Google Russia's failure to comply with an arbitration clause to which it agreed in the RSAs. NFPT, however, is not a party to those contracts. *See* Dkt. 5 at 3-4 (in 2009, "Google Ireland and Google Russia executed a valid reseller agreement"; and in 2018 "Google Ireland and Google Russia … entered into a new Google Reseller Agreement"). Nor does NFPT contend that it is a third-party beneficiary or that it has any claim under those contracts. It is well established that "'someone who is not a party to a contract has no standing to challenge the performance of the contract.'" *Bleavins v. Demarest*, 196 Cal. App. 4th 1533, 1542 (Cal. Ct. App. 2011) (cleaned up).[2]

NFPT does not have any legally protected interest in Google Ireland's breach-of-contract claims against Google Russia. The Court's injunction does not concern NFPT; it merely requires Google Russia to cease pursuing claims in Russia and bring them in the arbitration forum to which it agreed. And Google Ireland does not seek to require NFPT to arbitrate any claims under the RSAs. Moreover, any conceivable effect on NFPT is wholly speculative and remote. There is no basis to conclude that, if Google Russia were to comply with its contractual obligations, that would have any effect on what it would be entitled to receive or what it could ultimately collect from Google Ireland, let alone what NFPT would receive from Google Russia's estate. NFPT's remote and "wholly speculative" injury cannot establish standing. *E.g.*, *Clark v. City of Seattle*, 899 F.3d 802, 811-12 (9th Cir. 2018).

Denying NFPT intervention here would not harm NFPT—it would simply leave NFPT in exactly the same position it is currently in, where it can avail itself of the Russian bankruptcy proceedings to protect any interest it has in Google Russia's estate. *Cf. Alisal Water*, 370 F.3d at 921 (denying intervention where "other means [exist] by which [the proposed intervenor] may protect its interests"). Whatever NFPT's speculative and highly remote interests in funds flowing from Google

---

[2] NFPT's suggestion that this suit improperly aims at the Liquidator is mistaken and misplaced. As a counterparty to the RSAs, Google Russia is a proper defendant in this action. At the same time, any injunctive relief can properly encompass Google Russia's "agents," Fed. R. Civ. P. 65(d)(2)(B)—including the Liquidator, who filed claims on Google Russia's behalf. In any event, should the Liquidator have any concerns, he can seek to intervene on that basis; NFPT lacks standing to do so.

Ireland into Google Russia's estate, those interests are derivative of Google Russia's own interests and do not provide an independent basis for NFPT to intervene here.

### B. NFPT has no cognizable interest for intervention as of right

NFPT separately cannot intervene as of right because it lacks the requisite "'significant protectable interest' relating to" this litigation. *Donnelly*, 159 F.3d at 409 (citation omitted); *see* Fed. R. Civ. P. 24(a)(2) (requiring "an interest relating to the property or transaction" at issue). NFPT contends (at 10-11) it has a "significant protectable interest" that will be impaired absent intervention because it "is a significant creditor of" Google Russia. But that argument is foreclosed by controlling Ninth Circuit authority that NFPT fails to cite.

The Ninth Circuit has squarely held that "an allegedly impaired ability to collect judgments arising from past claims does not, on its own, support a right to intervention." *Alisal Water*, 370 F.3d at 920; *see also*, *e.g.*, *Ministry of Def.*, 385 F.3d at 1213 ("reject[ing]" view that would-be intervenor "meet[s] the 'significantly protectable interest' prong of the Rule 24(a)(2) test because he is a judgment creditor of [a party] and therefore has an interest in ensuring he is able to collect on his judgment"); *Glyn v. Roy Al Boat Mgmt. Corp.*, 897 F. Supp. 451, 453 (D. Haw. 1995) ("Were this court to agree that Efimov could intervene … it would transform every civil suit before this court into a kind of exaggerated interpleader action where all potential creditors of all parties could assert their rights.").

In *Alisal Water*, a "judgment creditor" sought "to intervene as of right under Fed. R. Civ. P. 24(a) in an environmental enforcement action" involving a receivership over the defendants' assets. *Alisal Water*, 370 F.3d at 918. Even though that receivership could have "impair[ed] the creditor's ability to collect [its] debt," *id.*, the Ninth Circuit held that a creditor's "mere interest in property that may be impacted by litigation is *not* a passport to participate in the litigation itself," *id.* at 920 n.3 (emphasis added). The Ninth Circuit explained that a creditor's "prospective collectability of a debt" is "several degrees removed from … the backbone of [the] litigation" and hence not an interest "related to the underlying subject matter of the litigation." *Id.* at 920. "To hold otherwise," the court of appeals added, "would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded." *Id.*

This is dispositive here. NFPT's interest is, in fact, further removed from that in *Alisal Water*.

7

The creditor's interest in *Alisal Water* was "several degrees removed" even though the total assets available for collection there were potentially affected by the court's appointment of a receivership to oversee the assets' "possible sale." 370 F.3d at 920. Here, in contrast, the underlying litigation concerns only whether Google Russia must bring its purported claims against Google Ireland in arbitration, not the total assets available. Allowing NFPT to intervene thus would allow "anyone with an interest in the property of a party" to "bootstrap that stake into an interest in the litigation itself," *id.* at 920 n.3, enabling virtually any defendant to evade its discovery obligations or the consequences of an adverse judgment by having its creditor intervene and litigate as its proxy.

NFPT's cited cases cannot overcome this controlling authority. And they are all inapposite in any event because, unlike here, the underlying litigation directly affected the proposed intervenor's rights. *See Twitch Interactive, Inc. v. Fishwoodco GmbH*, 2023 WL 7458374, at *1-2 (N.D. Cal. Nov. 9, 2023) (Davila, J.) (Proposed Intervenors "moved to intervene in this action because the arbitral award would purport to bind them as well" through an injunction that "included Proposed Intervenors"); *Ocean Thermal Energy Corp. v. Coe*, 2020 WL 4108161, at *3 (C.D. Cal. Mar. 5, 2020) (underlying litigation was "judgment enforcement action" concerning "the sale of [assets] by the receiver according to the terms approved by the Court" that "may not net sufficient cash to satisfy [would-be intervenor's] claim in full"); *In re Yukos Oil Co.*, 321 B.R. 396, 411 (Bankr. S.D. Tex. 2005) (underlying litigation sought "to alter the creditor priorities that would be applicable in the law of other jurisdictions").

NFPT does not have a cognizable interest that supports intervention here. Its attenuated judgment-creditor theory is "[a] remote interest" that "does not provide for intervention as a matter of right." *Ctr. for Biological Diversity v. U.S. EPA*, 2012 WL 909831, at *4 (N.D. Cal. Mar. 16, 2012); *accord*, *e.g.*, *Karnoski v. Trump,* 2017 WL 5668071, at *3 (W.D. Wash. Nov. 27, 2017) (citation omitted) ("'[a] claim based only on an indirect economic effect of some action is rarely … sufficient to justify intervention'") (citation omitted). That is "fatal to its application." *Perry*, 587 F.3d at 950.

### C.     NFPT has failed to establish any basis for permissive intervention

NFPT cites no case allowing a non-party who lacks standing to step into the shoes of a defendant who refuses to even appear in a lawsuit. NFPT's one-paragraph request (at 11) for permissive intervention straightforwardly fails. Notably, NFPT has no "claim or defense that shares with the main

8

action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). And even if it did, allowing NFPT to serve as the stand-in for a party that chose not to appear in this litigation would intolerably "prejudice the adjudication of the original parties' rights" in this case. Fed. R. Civ. P. 24(b)(3).

*First*, NFPT does not assert any formal claim or defense at all—which only underscores that intervention is inappropriate here. Like parties, intervenors must assert a claim or defense involving another party and must file "a pleading that sets out [that] claim or defense." Fed. R. Civ. P. 24(c). NFPT concedes (at 12) that it has no "new claims" of its own, as it has no relevant claims or defenses involving either Google Ireland or Google Russia. Rather, NFPT's purported motion to vacate and dismiss presents Google Russia's defense—and that is not even a "pleading." *See* Fed. R. Civ. P. 7(a)-(b) (distinguishing between "Pleadings" and "Motions"); *see also, e.g.*, *Gabauer v. Woodcock*, 425 F. Supp. 1, 3 (E.D. Mo. 1976) (denying permissive intervention to third party because the attached "motion to dismiss is not a pleading"), *rev'd in part on other grounds*, 594 F.2d 662 (8th Cir. 1979). Because NFPT has no "claim or defense that shares with the main action" any common questions, permissive intervention is not available. Fed. R. Civ. P. 24(b)(1)(B).

*Second*, even if NFPT could satisfy Rule 24(b)'s requirements, permissive intervention still would not be warranted. The Ninth Circuit has articulated a number of factors the Court should consider pursuant to Rule 24(b)(3) "'in making its discretionary decision on the issue of permissive intervention'"—including "'the nature and extent of the intervenors' interest, their standing to raise relevant legal issues,'" "'whether intervention will prolong or unduly delay the litigation,'" and whether intervention would contribute "'to the just and equitable adjudication'" of the case. *Callahan v. Brookdale Senior Living Cmtys.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (citation omitted).

All of these factors weigh against intervention here. As explained above, NFPT has neither standing nor any cognizable interest in this action. *Supra* IV.A-B. Moreover, "[b]ecause [NFPT] did not file a motion to intervene until after the district court issued its decision" on the preliminary injunction, Google Ireland "would be prejudiced by the requested intervention." *United States v. State of Washington*, 86 F.3d 1499, 1505 (9th Cir. 1996). Most importantly, permitting intervention would destroy any "'just and equitable adjudication'" of Google Ireland's claims. *Callahan*, 42 F.4th at 1022 (citation omitted). NFPT seeks to intervene for the improper purpose of unwinding the Court's

9

preliminary injunction and dismissing the case, despite Google Russia's failure to appear and press those same arguments on its own behalf. That alone is reason to deny intervention. *See Arizona v. California*, 460 U.S. 605, 615 (1983) ("permission to intervene does not carry with it the right to relitigate matters already determined in the case"). Indeed, it would be especially inequitable should NFPT be allowed to intervene to vacate Google Ireland's preliminary relief at a time when Google Ireland is constrained by Russian AASIs obtained in violation of this Court's TRO.

But the equities are far worse than that. By raising Google Russia's jurisdictional arguments, NFPT seeks to enable Google Russia to remain absent and thereby avoid any sanctions proceedings for blatantly violating this Court's TRO. Google Russia has *chosen* to remain absent, just as it has *chosen* to directly violate this Court's TRO by continuing to pursue relief in Russia. Allowing a non-party proxy to advocate for Google Russia's positions so that Google Russia never has to face the consequences of defying this Court's orders would neuter the Court's contempt power and be profoundly inequitable. *See United States v. Cermak*, 2012 WL 5381322, at *2 (D. Or. Sept. 26, 2012) (denying intervention where intervention was "merely an attempt to make an end-run around the court's previous Order" and "raises the issues of 'sham … objections'") (citation omitted).

There is no reason to reconsider the Court's prior decisions and orders. Google Russia and its Liquidator still have ample process available to them and can appear, if they choose, by the Court's pending April 3, 2025 deadline to file a response. If Google Russia refuses to appear, it should be held to the consequences of that decision. Nothing in the federal rules permits an unwilling defendant to avoid a lawsuit—while flouting the Court's orders and eviscerating its contempt authority—by sending a purportedly "interested" proxy to argue its defense.

## V.     CONCLUSION

For the foregoing reasons, Google Ireland respectfully requests that the Court deny NFPT's Motion to Intervene.

Dated: March 10, 2025					Respectfully submitted,

**KING & SPALDING LLP**

By: */s/ Olivia A. Radin*
OLIVIA A. RADIN
DAVID K. WILLINGHAM
LAURA HARRIS
SAMUEL DIAMANT
KELLAM M. CONOVER

*Attorneys for Plaintiff*
GOOGLE IRELAND LIMITED